STATE of Wisconsin, Plaintiff-Respondent,

v.

Wayne P. HARRIS, Defendant-Appellant.

Court of Appeals

*No. 2011AP983–CR. Submitted on briefs February 29, 2012.*
*—Decided June 6, 2012*

2012 WI App 79

(Also reported in 819 N.W.2d 350.)

480

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gary Grass* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Curley, J.

¶ 1. BROWN, C.J.   Wayne P. Harris appeals from the denial of his postrevocation motion challenging his reconfinement sentence on the basis that the court

relied on inaccurate information when sentencing him.[1] Although the facts the court used were mostly consistent with the department of corrections (DOC) revocation summary, Harris argues that the summary itself, taken as a whole, was an inaccurate portrayal of his extended supervision record. At the hearing, Harris's reconfinement counsel attempted to give some context to the summary, but it was postrevocation counsel who really brought objective evidence so that the summary could be read in context. The postrevocation court denied Harris's motion without a hearing. We hold otherwise. Harris's motion alleged facts that, if true, would entitle him to relief on his claim that reconfinement counsel was ineffective for failing to present correct information, thus causing the court to rely on inaccurate information. That is enough to meet the threshold for a *Machner*[2] hearing. But, we reject Harris's attempt to use the reconfinement proceeding as a vehicle to modify his original sentence.

## Background

¶ 2. Harris was originally convicted in 2006 after being caught engaging in a sexual online chat with an individual pretending to be a thirteen-year-old girl. The person he was chatting with was actually an agent of a private organization working with a local news station, so when Harris showed up to meet the "girl," he was met with cameras and ultimately charged with a crime. He pled guilty to use of a computer to facilitate a child sex

[1] Judge Linda M. Van De Water presided over the reconfinement hearing, but Judge Patrick C. Haughney presided over the postrevocation motion.

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

crime, contrary to WIS. STAT. § 948.075(1) (2003–04),[3] and was sentenced to one and one-half years of initial confinement followed by ten years of extended supervision, for a total eleven and one-half year sentence.

¶ 3. Harris began his extended supervision on January 22, 2008, and he was revoked on July 10, 2009. According to the DOC's revocation summary, the revocation was based on allegations of violating his electronic monitoring schedule, having contact with minors without advanced approval from his agent, and one incident of "unapproved sexual contact" with an adult woman. The summary went on to explain that "twenty-two warrants were issued by the DOC monitoring center for Harris'[s] arrest, for failing to follow his approved [electronic monitoring] schedule." It also elaborated that "[o]n at least two occasions, [Harris] admits to having contact with minors without the advance knowledge or permission of his agent," and that the unapproved sexual contact was with his former girlfriend, whom he "hugged and kissed . . . and then grabbed her buttocks."

¶ 4. In addition to its outline of violations leading to revocation, the summary described other problems Harris had on extended supervision:

> The defendant failed to comply with Sex Offender Treatment groups as directed, failing to complete homework on several occasions, failing to pay as directed, and failing to attend groups as scheduled.
>
> . . . .
>
> Harris failed to maintain stable, full time employment throughout his supervision period, despite his Court

[3] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

> Order directing this . . . . He secured full time employment through a temporary agency and maintained this from 04/07/08 through 10/31/08, when the position "ran out." After this job loss, the defendant was scheduled out for work search, yet his activity logs failed to reflect any concerted effort to secure employment.
>
> . . . .
>
> On 03/25/09, Mr. Harris was ordered by his agent to return his [sex offender registration] letter, after receiving notice that he was non-compliant with the registry. On 03/25/09, the defendant admitted to failing to return his letter in a timely manner.

The DOC recommended one and one-half years for the period of reconfinement.

¶ 5. Before the reconfinement hearing, Harris's attorney filed two documents with the court—a letter from Harris's treatment provider and a copy of Harris's signed statement regarding his violations. The letter from Harris's treatment provider explained that Harris's repeated violations of rules of supervision would elevate him from low risk to "between low and moderate risk" for recidivism. The provider also clarified that he did not see Harris's incidental contact with children as "having victim access" because "[t]o have the contact with children be a risk the offender would have to have engaged the child in some way. By all accounts Mr. Harris did not engage the children." Harris's signed statement claimed that his noncompliance with electronic monitoring was due to (1) going with his father to run two errands without permission while he was supposed to be at his father's house, (2) going to his sister's house, and (3) making three trips to the grocery store without permission. He also explained that his unauthorized contact with minors was always brief and supervised by the children's parents.

¶ 6. At the reconfinement hearing, the court asked whether the "parties had an opportunity to review" the summary, and both attorneys stated that they had. The court then asked whether there were "[a]ny changes, corrections, or additions," to which defense counsel responded that it planned to "comment[] on that." The court clarified, "But no factual or technical errors?" Defense counsel responded that there were none. The State then made a brief argument for a four and one-half year sentence.

¶ 7. Defense counsel made a lengthy argument for "something less than" the DOC's recommendation of one and one-half years and asked the court to put the DOC's recommendation at "the high end of its consideration." In his argument, he reiterated much of the mitigating information from the letter and statement. Defense counsel also explained that when he spoke with the treatment supervisor, he learned that Harris's attendance and homework issues from the beginning of the treatment program had improved after the treatment provider realized he had reading problems and made some appropriate accommodations. And defense counsel gave some context to Harris's employment situations, stating that when Harris had full-time employment, he had to commute twenty miles by bicycle to do it, which he did. Even after that job ended, he obtained employment at his residence in exchange for a free room. But other than the letter and statement, counsel submitted no testimony or documentary evidence supporting his mitigating statements.

¶ 8. The reconfinement court ultimately sentenced Harris to three years of reincarceration. Before doing so, it explained:

> You haven't even been out that long . . . . You consistently violated your [electronic monitoring] schedule

> with unapproved and unscheduled times. You deviated from your schedule without advanced knowledge or permission.
>
> . . . .
>
> You failed to comply with the sex offender treatment group . . . . You were unprepared when you did go. You didn't have homework done. You didn't pay attention. You were more of a nuisance in group than anything else.
>
> Apparently, you didn't maintain full-time employment, and you didn't even cooperate with the work search that they allowed you to be out for. You were gone anywhere from minutes to hours. And between February 8 of '08 and March 15 of '09, twenty-two arrest warrants were issued for you. That's not compliance with supervision.
>
> I guess what's most disturbing to the court is you left your residence on a nightly basis when most of this type of activity occurs and with no reason to be out whatsoever, it's certainly not employment.
>
> . . . .
>
> You also didn't register with the sex offender registry. And I would say that and treatment are the biggest aspects, and also being able to be monitored.

Defense counsel interjected at one point to explain the "nightly" absences from Harris's home. He stated that at the time, Harris had explained to his agent that he was actually at his residence, but outside the range of his electronic monitoring, and he was ultimately released from custody because his explanation was deemed reasonable.

¶ 9. Harris eventually obtained appellate counsel, who filed a lengthy postrevocation motion for a hearing to address resentencing, sentence modification, and

ineffective assistance of counsel. He alleged five areas where the trial court relied on inaccurate information at the sentencing: (1) Sex offender registration: the court stated that he did not register, when in fact he did register. Further, the problems he had were with his postregistration updates, which were due to mail being sent to the wrong address despite him providing the correct one; (2) Sex offender treatment: the court outlined a dismal record of attendance and participation in treatment, when in fact those issues had been resolved and his treatment provider had many positive things to say about him; (3) Electronic monitoring: the reconfinement court pointed out his twenty-two warrants under the program as evidence that he consistently violated the schedule, when in fact many of those warrants were due to technical problems with the monitoring device and his agent's errors in recording his schedule; (4) Employment: the court referenced his failure to maintain full-time employment and his failure to search for work, when in fact he maintained a full-time job where he had to commute twenty miles by bicycle and then found part-time work that paid for his housing while searching for full-time work; and (5) Overall performance on supervision: the court pointed out that there was not a lot of positive information in the summary and stated that Harris did not appear to have followed any of the rules or even attempted to do so, when in fact there was substantial evidence of his compliance that was not in the summary or the record.

¶ 10. Importantly, Harris's postrevocation counsel provided multiple exhibits with the motion to contrast the DOC summary and back up his account of what the accurate information was. When asked, postrevocation counsel also provided an outline of wit-

nesses and their expected testimony at an evidentiary hearing. The exhibits to the motion included Harris's sex offender registration form, excerpts from the chronological log maintained by Harris's agent while he was on supervision, information from the warrants that were issued while Harris was on supervision, excerpts from Harris's activity logs documenting his work search, positive evaluations from a supervisor and teacher, and several other documents.

¶ 11. The State responded to Harris's postrevocation motion by pointing out that the sentence of three years was not excessive and arguing that the information relied on by the reconfinement court did not paint an inaccurate overall picture. The postrevocation court agreed with the State and denied Harris's motion without an evidentiary hearing. Harris now appeals, raising the same issues he did in his postrevocation motion.

Alleged Ineffective Assistance of Counsel

¶ 12. Whether Harris's postrevocation motion alleging ineffective assistance of counsel entitled him to a hearing involves a mixed standard of review. *See State v. Allen*, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. First, we determine whether the motion alleged sufficient material facts that, if true, would entitle Harris to relief, which is a question of law that we review de novo. *See id.* If the motion raised such facts, the trial court must hold an evidentiary hearing. *Id.* If not, the trial court has the discretion to grant or deny a hearing. *Id.* Imbedded in our analysis of the sufficiency of Harris's motion is our discussion of whether he can prevail on his ineffective assistance of counsel and sentence modification claims. *See State v. Balliette*, 2011 WI 79, ¶ 20, 336 Wis. 2d 358, 805 N.W.2d 334, *cert.*

*denied,* 132 S. Ct. 825 (2011) (an analysis of the sufficiency of a motion for postconviction relief involves a review of the underlying claims as well as the pleading requirements).

¶ 13. We begin by analyzing whether Harris has alleged facts that, if true, would entitle him to a resentencing hearing. A defendant has a due process right to be sentenced based on accurate information. *See State v. Tiepelman*, 2006 WI 66, ¶ 9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant has been denied that right is a constitutional issue that we review de novo. *Id.* "A defendant who requests resentencing due to the [trial] court's use of inaccurate information at the sentencing hearing 'must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing.' " *Id.*, ¶ 21 (citations omitted).

¶ 14. Because reconfinement counsel waived his objection to inaccuracies relied on by the reconfinement court,[4] we analyze the resentencing issue under the guise of ineffective assistance of counsel. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) ("[T]he normal procedure in criminal cases is to address waiver within the rubric of the ineffective assistance of counsel."). To prevail on an ineffective assistance of counsel claim, Harris must first show that counsel was deficient by identifying "specific acts or omissions of

[4] We do not address the waiver issue in detail, but as we will explain, the court relied heavily on misleading facts from the DOC summary. Although reconfinement counsel did attempt to cast some of those facts in a different light at the hearing, he also explicitly declined to object to any "factual or technical errors" in the summary.

counsel that fall 'outside the wide range of professionally competent assistance.' " *See State v. Taylor*, 2004 WI App 81, ¶ 13, 272 Wis. 2d 642, 679 N.W.2d 893 (citation omitted). Then, he must prove prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See State v. Thiel*, 2003 WI 111, ¶ 20, 264 Wis. 2d 571, 665 N.W.2d 305 (citation omitted).

¶ 15. The first issue is whether there is enough to have a *Machner* hearing to determine if Harris's reconfinement counsel was ineffective for failing to object to the court's statement that Harris "didn't register with the sex offender registry." The State concedes that this statement was inaccurate, but asserts that the reconfinement court's reliance on it was harmless error. We disagree. First of all, the question is not harmless error. The question is whether counsel was arguably defective for failing to object to this reference by the reconfinement court and, if so, whether Harris was likely prejudiced. At the time of the hearing, Harris was considered "non-compliant" because he had failed to respond to his most recent confirmation letter. According to his postrevocation motion, this is because he had some recurring problems receiving mail at the address where he was living. Although he had registered using his correct living address, mail was delivered to a building next door. On at least one occasion, his agent's notes show that his confirmation letter was returned to the department. Therefore, when the summary stated that he was "non-compliant," that did not mean he had failed to register. The reconfinement court was wrong to conclude otherwise, and the postrevocation court could

find counsel deficient for failing to correct the reconfinement court's inaccurate statement.

¶ 16. Regarding prejudice, when referencing Harris's failure to register, the court explained: "I would say that [sex offender registration] and treatment are the biggest aspects, and also being able to be monitored." It is obvious, based on the court's own words, that the court considered this to be one of the major factors in the reconfinement sentencing analysis. Therefore, counsel's failure to object to this inaccuracy is unquestionably a factor in determining whether there was prejudice. *See Thiel*, 264 Wis. 2d 571, ¶ 59 ("prejudice should be assessed based on the cumulative effect of counsel's deficiencies").

¶ 17. Not only was counsel arguably deficient in regards to the court's statement about not having registered as a sex offender, but we also believe that counsel may have been deficient for not presenting the evidence necessary to rebut information contained in the DOC revocation summary. As we already outlined in the background section, the reconfinement court relied heavily on information from the summary when sentencing Harris. The State argues that the summary was factually accurate, so Harris cannot prevail on a claim that he was sentenced on inaccurate information. We disagree. When looked at individually, the facts in the DOC summary relied on by the court were, for the most part, technically true. However, because the summary contained only those facts which portrayed Harris's performance in a negative light, when read together, they formed an inaccurate basis for the reconfinement court's sentencing decision. In other words, the summary was technically true but misleading. Although it is difficult to pinpoint individual inaccuracies in the DOC summary, the summary was written in a way that

invited the court to draw inaccurate negative inferences. And as Harris pointed out in his postrevocation motion, it is evident from the sentencing transcript that the court did in fact draw many of those inferences.

¶ 18. We will illustrate our point with two examples. First, the DOC summary stated that "twenty-two warrants were issued by the DOC monitoring center for Mr. Harris'[s] arrest, for failing to follow his approved [electronic monitoring] schedule." This is presumably what led the reconfinement court to conclude that "between February 8 of '08 and March 15 of '09, twenty-two arrest warrants were issued for [Harris]. That's not compliance with supervision." Harris's agent's notes, however, indicate that several of those warrants may have been based on *agent* error, last minute approved schedule changes, or malfunctioning equipment.[5] So even though it is technically true that twenty-two warrants were issued against Harris, if the facts alleged in Harris's postrevocation motion are proven true, the twenty-two warrants were largely not his fault, contrary to what the DOC summary suggests.

¶ 19. Second, the DOC summary stated that Harris "failed to comply with Sex Offender Treatment groups as directed, failing to complete homework on several occasions, failing to pay as directed, and failing to attend groups as scheduled." The reconfinement court in turn emphasized that Harris did not comply

[5] For example, at the time that Harris was put into custody briefly for several violations in a row, he consistently maintained that he was on the property where he lived. His agent's notes reflect that his transmitter battery was low and she noted that a battery change was necessary, but the battery was not changed until two weeks later. As Harris pointed out in his motion, once the battery was changed, the daily out-of-range indications stopped.

with his sex offender treatment group because he was "unprepared" when he did go; he did not have homework done, did not "pay attention," and was "more of a nuisance in group than anything else." In contrast, Harris's agent's logs include notations that he was "attentive" and "participated" in treatment on several occasions, made "some comments" at least twice, and "listened," "made an effort," and a "good effort" at least once. Again, although the DOC summary's statements about Harris's failures in treatment are technically true, Harris's motion alleges that the court's resultant inference that Harris's treatment record contained no positives was inaccurate based on the DOC's own records.

¶ 20. Counsel's alleged deficiency here is the failure to present accurate information to the court in light of the inaccurate portrayal of information before it at sentencing. The State claims that since reconfinement counsel orally addressed most of the issues highlighted in the postrevocation motion, the deficiency issue becomes "a question of whether constitutionally effective assistance required Harris's reconfinement counsel to provide the reconfinement court with, say, 156 pages of exhibits [] in support of Harris's reconfinement recommendation." It additionally argues that the record shows no prejudice because "[w]hen Harris's reconfinement counsel attempted to steer the reconfinement court away from a highly negative view of Harris's misconduct . . . the court opted to view them more harshly."[6] We disagree on both points.

[6] In a related argument, the State contends that Harris cannot prevail on an ineffective assistance of counsel claim because his postrevocation and appellate arguments amount to only his *opinion* as to how Harris's various violations should have been interpreted by the trial court. In support of that

¶ 21. The way in which the mitigating information regarding Harris's extended supervision record was presented—with vague argument instead of facts —matters. At the hearing, the reconfinement court had to weigh the credibility of Harris's attorney's summary of Harris's behavior while under DOC supervision against the DOC's own summary of Harris's behavior while on supervision—and it obviously chose to rely on the DOC summary. But it was not until Harris's postrevocation motion that the court had actual evidence before it that many of the DOC's own records showed a different account of Harris's behavior than what was highlighted in the DOC summary. Harris can show deficient performance by highlighting the lack of evidence used to support reconfinement counsel's argument at the hearing.

¶ 22. For similar reasons, we reject the State's argument regarding prejudice, which is basically that since the court rejected reconfinement counsel's argu-

---

argument, he cites to *State v. Saunders*, 196 Wis. 2d 45, 51–52, 538 N.W.2d 546 (Ct. App. 1995), where we delineated between "factual-objective" and "opinion-subjective" assertions. "Factual objectivity refers to *facts* in the sense of what is *really* true, while opinion subjectivity refers to mere 'opinion' or personal taste." *Id.* at 51. In *Saunders*, we explained that a defendant's allegation that his attorney had failed to do things "properly," without more explanation, was an opinion-subjective statement. *Id.* at 51–52.

This case is not like *Saunders*. Both reconfinement counsel's sentencing argument and Harris's postrevocation motion contained factual-objective assertions. For example, it is fact, not opinion, that Harris's agent's records show Harris's successful participation in sex offender treatment on multiple occasions. And it is fact, not opinion, that most of Harris's warrants do not conclusively reflect actual noncompliance with supervision.

ments regarding the DOC summary, it would also have rejected the hard evidence presented by postrevocation counsel showing those discrepancies. We cannot agree with that assumption. As we previously explained, there is a difference between vague argument and hard evidence. We will not now speculate as to what the reconfinement court may have done with hard evidence in the record.

¶ 23. We are mindful that in an ineffective assistance of counsel claim, counsel is "strongly presumed to have rendered" adequate assistance within the bounds of reasonable professional judgment and that we must be vigilant against the skewed perspective that may result from hindsight. *See Balliette*, 336 Wis. 2d 358, ¶ 25 (citations omitted). Contrary to the State's suggestion, our holding is not that in order to avoid being found ineffective, defense counsel must present 156 pages of documentation to a sentencing court. What we are saying is that the summary in this case was skewed so negatively that the inaccurate unfavorable conclusions drawn by the court were foreseeable. Because of that, it was Harris's counsel's responsibility to present objective evidence to counter the summary's negativity. As we noted before, the summary was technically true, but misleading. It is counsel's duty to investigate and correct misleading histories when the client has so claimed. This is especially so when it is a DOC summary, a document heavily relied upon by our trial courts.

¶ 24. Without a *Machner* hearing, we have no way to know whether reconfinement counsel had reason to anticipate the issues we have discussed and had a strategic reason for dealing with them the way he did, or whether he simply failed to adequately investigate

the accuracy of the DOC's summary. We conclude that Harris has alleged facts which, if proven, would entitle him to a resentencing based on counsel's failure to produce available evidence to counter an inaccurate characterization that was before the court. We therefore reverse and remand for a *Machner* hearing.

### The Sentence Modification Motion Before the Reconfinement Court

¶ 25. Now we discuss Harris's second argument, which is directed not to the reconfinement court's sentence, but to the original trial court's sentence. He claims that the reconfinement court has the authority to reach back and change his original sentence. We disagree. The reconfinement court simply does not have the authority to modify Harris's original sentence.

¶ 26. WISCONSIN STAT. § 302.113(9)(am) (2007–08)[7] explains the role of the reconfinement court at a reconfinement hearing:

> If the extended supervision of the person is revoked, the person shall be returned to the circuit court for the county in which the person was convicted of the offense for which he or she was on extended supervision, and the court shall order the person to be returned to prison for any specified period of time that does not exceed the time remaining on the bifurcated sentence.

We see no authority there or elsewhere for a defendant to use his or her revocation and resultant reconfine-

[7] We cite to the 2007–08 version of this statute because it was the one in effect at the time of Harris's revocation. WISCONSIN STAT. § 302.113(9)(am) was amended by 2009 Wis. Act 28, § 2726. The amended version first applied to revocations that occurred on October 1, 2009. *See* 2009 Wis. Act 28, §§ 9311(4q) and 9411(2u).

ment hearing as a vehicle for reducing the overall sentence imposed.[8]

¶ 27. We recognize that in *State v. Noll*, 2002 WI App 273, ¶ 5, 258 Wis. 2d 573, 653 N.W.2d 895, this court held that the trial court has inherent authority to address sentence modification based on new factors at any time. However, *Noll* was speaking to the *trial* court's inherent authority and did not address a situation where the issue was brought as part of reconfinement proceedings. *See id.*, ¶¶ 4–5. Furthermore, in *Noll*, the defendant specifically stated in his motion that he was invoking the court's inherent authority to modify a sentence—the only issue was whether he fell outside of the time limits to do so. *Id.* Here, in contrast, Harris made his motion as part of reconfinement proceedings and an appeal therefrom pursuant to WIS. STAT. RULE 809.30(2)(h). As we have stated in the past, "A challenge to a post-revocation sentence does not

[8] Harris suggests that sentence modification is available to him under the remedy for wrongs clause of the Wisconsin Constitution, *See* WIS. CONST. art. I, § 9, because "the delay imposed by appeal effectively destroys his interest in being resentenced." This argument is based on the fact that his reconfinement sentence will likely have been served in its entirety by the time this appeal is complete. Our supreme court has recognized that "[w]hen an adequate remedy or forum does not exist to resolve disputes or provide due process, the courts, under the Wisconsin Constitution, can fashion an adequate remedy." *D.H. v. State*, 76 Wis. 2d 286, 294, 251 N.W.2d 196 (1977) (citation omitted). We decline to use that power in this case. As we will explain, Harris still may be able to pursue his sentence modification claims, albeit not through this appeal. Once his reconfinement sentence is complete, he will still have several years of extended supervision to serve on his original sentence.

bring the original judgment of conviction before the court." *State v. Scaccio*, 2000 WI App 265, ¶ 10, 240 Wis. 2d 95, 622 N.W.2d 449.

¶ 28. In *State v. Hall*, 2007 WI App 168, ¶¶ 13–14, 304 Wis. 2d 504, 737 N.W.2d 13, we analyzed whether the reconfinement court had the authority under WIS. STAT. § 302.113(9)(am) (2005–06) to revisit a defendant's eligibility for the Challenged Incarceration Program or the Earned Release Program, which is typically decided as part of sentencing pursuant to WIS. STAT. § 973.01. We explained that § 302.113(9)(am) "governs the reconfinement procedure and sets forth the limits of exercisable discretion of the court," and that if the legislature had wanted courts to revisit the application of those programs as part of reconfinement proceedings, it "would have expressly provided for that exercise of discretion within § 302.113(9)(am)." *Hall*, 304 Wis. 2d 504, ¶ 14. That same reasoning applies to this case. If the legislature had wanted to give the reconfinement court the authority to modify the defendant's original sentence as part of reconfinement proceedings, it could have and would have done so. Since it did not, we conclude that the court had no authority to address Harris's sentence modification claim. If Harris wishes to move to modify his sentence, he may well be able to do so pursuant to *Noll*, but not as part of his WIS. STAT. RULE 809.30(2)(h) motion challenging his reconfinement sentence.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded.