STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffery A. KEERAN, Defendant-Appellant.†

Court of Appeals

*No. 01–1892–CR. Oral argument July 25, 2002.—
Decided December 4, 2003.*

**2004 WI App 4**

(Also reported in 674 N.W.2d 570.)

† Petition to review denied 2-24-04.

762

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Joseph L. Sommers*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant

attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Sally L. Wellman*.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Jeffery A. Keeran was tried before a jury and convicted of one count of first-degree intentional homicide with the use of a dangerous weapon, one count of armed robbery, and one count of burglary while armed with a dangerous weapon, all as party to the crime. Keeran makes three arguments on appeal: (1) that the trial court erroneously declined to instruct the jury on the statutory defense of coercion; (2) that his trial counsel provided ineffective assistance because counsel failed to present evidence showing that Keeran participated in the crimes because he reasonably feared his co-participant; and (3) that this court should grant a new trial in the interest of justice. We reject each of these arguments and affirm.

## Background

¶ 2. On June 27, 1998, Jon Barreau, a long-time companion of Jeffery Keeran, came to Keeran's home in Monroe and told Keeran he (Barreau) was going to Madison to rob someone and that Keeran was coming with him. According to Keeran, Barreau threatened Keeran when Keeran said he did not want to participate. Barreau got two bats out of a garage and the two men, along with a woman named Tiffany Kohl, drove to Madison. They stopped the car on a side street in Madison. Keeran and Barreau got out of the car and walked to the home of Robert Hansen. Barreau knew Hansen from prior contacts. Both Barreau and Keeran entered Hansen's house. They each had a bat concealed in a pants leg. While in Hansen's house, Barreau beat

764

Hansen with a bat, knocking Hansen to the floor. When Barreau hit Hansen across the face, Barreau's bat broke. According to Keeran, Barreau told Keeran to hit Hansen and threatened "hit him or I'm hitting you." Keeran took the bat he brought into the house and, using both hands, hit Hansen twice. Keeran testified that he went outside, vomited, and waited about forty-five minutes until Barreau came out with various items taken from Hansen's house.

¶ 3. Hansen died as a result of the beating. The pathologist who examined Hansen identified ten wounds about Hansen's head, all consistent with the sort of blunt-force trauma that a bat could cause. In simple terms, Hansen was beaten to death.

### Discussion

*A. Denial of Coercion Defense Jury Instruction*

██

¶ 4. Keeran asserts that he was erroneously denied coercion jury instructions with respect to all three crimes charged—first-degree intentional homicide, armed robbery, and burglary while armed. We disagree.

██ ██

¶ 5. The statutory defense of coercion is a complete defense to any crime except first-degree intentional homicide. A successful coercion defense reduces first-degree intentional homicide to second-degree intentional homicide. "Coercion" occurs when a "threat by a person other than the actor's coconspirator . . . causes the actor reasonably to believe that his or her act is the only means of preventing imminent death or great bodily harm to the actor or another and which causes

him or her so to act." Wis. Stat. § 939.46(1) (2001–02).[1] The coercion defense is limited to the "most severe form of inducement." *State v. Amundson*, 69 Wis. 2d 554, 568, 230 N.W.2d 775 (1975). It requires a finding "under the objective-reasonable man test, with regard to the reasonableness of the actor's beliefs that he is threatened with immediate death or great bodily harm with no possible escape other than the commission of a criminal act." *Id.*

██ 6. A defendant seeking a coercion defense instruction must meet the initial burden of producing evidence to support such an instruction. *See State v. Stoehr*, 134 Wis. 2d 66, 87, 396 N.W.2d 177 (1986). A defendant is entitled to a coercion defense instruction if "(1) the defense relates to a legal theory of a defense, as opposed to an interpretation of evidence; (2) the request is timely made; (3) the defense is not adequately covered by other instructions; and (4) the defense is supported by sufficient evidence." *State v. Coleman*, 206 Wis. 2d 199, 212–13, 556 N.W.2d 701 (1996) (citations omitted). Regarding the last prong of this test, evidence is sufficient if a reasonable construction of the evidence, viewed in a light most favorable to the accused, supports the defendant's theory. *Id.* at 213.

¶ 7. Keeran argues that he was entitled to a coercion defense instruction because a reasonable construction of the evidence supports a finding that threats made by Barreau reasonably caused Keeran to believe that participating in the crimes (including striking Robert Hansen with a bat as Hansen lay on the floor) was "the only means of preventing imminent death or

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

great bodily harm" to Keeran. The trial court gave several reasons why Keeran was not entitled to a coercion defense instruction. We need not address all of these reasons because we agree with the trial court, and the State, that Keeran has failed to meet his initial burden of producing sufficient evidence to support a finding that he had no "means of preventing imminent death or great bodily harm" to himself, except by participating in the crimes. *See* WIS. STAT. § 939.46(1). In the words of the *Amundson* court, Keeran failed to present evidence showing that he reasonably believed there was "no possible escape other than the commission of a criminal act." *Amundson*, 69 Wis. 2d at 568.

¶ 8. Because Hansen died and because neither Barreau nor Tiffany Kohl testified, Keeran's testimony is the only evidence that might support a finding that he had no other means of preventing imminent harm. His testimony, however, is insufficient to require a coercion instruction because that testimony lacks details necessary to support a finding that Keeran's *only* means of preventing *imminent* death or great bodily harm at the hands of Barreau was to remain with Barreau and participate in the crimes. The following is a summary of Keeran's trial testimony viewed most favorably to his request for a coercion defense instruction.

¶ 9. In June 1998, Barreau went to Keeran's house in Monroe sometime in the afternoon; the sun was still out. Barreau talked about robbing someone in Madison. Barreau told Keeran that Keeran was going with him, even though Keeran protested that he did not want to go. Barreau told Keeran "you're going with me or whatever happens is happening to you." Keeran thought this meant Barreau "was either going to beat the shit out of me — beat me up, or he was going to do

something to me." After approximately twenty minutes, Tiffany Kohl came to Keeran's house. Barreau went into the garage and grabbed two bats. With Kohl driving, all three people rode to Madison, stopping at a gasoline station near Keeran's house along the way. After they arrived in Madison, Kohl "just drove around," with Barreau telling her where to go. While in the car on the way to Madison, Keeran again told Barreau he "didn't want to go," and Barreau looked at Keeran and said "you're going." At some point, the car stopped on a Madison side street and Keeran and Barreau got out of the car. Kohl remained in the car. Barreau and Keeran then walked "for about two hours" until they came to Robert Hansen's front door sometime after dark. Keeran understood that Hansen was Barreau's intended victim.

¶ 10. Hansen's mother and a police officer described Hansen's house. The front door enters into a living room. The kitchen is in the back of the house and adjoins the living room. From the living room, you can see through the kitchen to the back door of the house. The bathroom is off the kitchen.

¶ 11. Barreau and Keeran entered Hansen's house. Both men had a bat concealed in a pant leg. Keeran said all three men were in the living room area of Hansen's house. After Barreau and Hansen talked for a time, Keeran went to the bathroom. When Keeran came out of the bathroom, he saw Barreau hitting Hansen's head with a bat. Barreau hit Hansen three or four times while Keeran "just stood there" at a distance of twenty to twenty-four feet. Hansen was standing when Keeran came out of the bathroom, but Hansen then fell to his knees. As Hansen fell to his knees, Barreau hit Hansen across the face with the bat and Barreau's bat broke. Barreau held the broken bat and

told Keeran to hit Hansen. Barreau told Keeran: "hit him or I'm hitting you." Keeran held his bat with both hands and hit Hansen's head two times.

¶ 12. To gain entitlement to a coercion defense instruction, Keeran needed to provide details explaining why his only means of preventing Barreau from inflicting on Keeran "imminent" death or great bodily harm was to participate in the crimes. However, such details are lacking. There is no explanation as to why, prior to leaving Monroe for Madison, Keeran could not have gone into his home and telephoned the police or run out the back door; no explanation as to why Keeran could not have excused himself to use the bathroom at the gasoline station and then taken refuge in that station with witnesses present;[2] no explanation as to why Keeran could not have fled the car at a busy intersection in Madison; and no explanation as to why Keeran could not have fled from Barreau while walking for two hours. Was Barreau faster or stronger than Keeran? Keeran did not assert either.[3]

¶ 13. The lack of details similarly defeats Keeran's assertion that he had no alternative when Barreau directed him to hit Hansen. Keeran does not explain why he could not have run out the back door of Hansen's house or why he could not have used his unbroken bat to fend off Barreau while otherwise leaving the house. Was something blocking Keeran's exit? Keeran points to no such evidence. Keeran did not explain to the jury why, at the moment he stood

[2] Were no people present at the gasoline station? Keeran did not say.

[3] Keeran testified that Barreau was one year older than Keeran and that they were about the same size.

watching at a distance of about twenty feet with an unbroken bat in his hands, he had no choice but to strike Hansen.

¶ 14. Moreover, Keeran did not take the most obvious step to avoid hitting Hansen: he did not tell Barreau that he did not want to hit Hansen, that he would not hit Hansen, or that it was unnecessary that he hit Hansen because Hansen was obviously already at Barreau's mercy. It might be that such an attempt would have produced yet another threat from Barreau, but the point is that Keeran did not even try. Instead, by his own testimony, Keeran simply complied with Barreau's directive.

¶ 15. Keeran testified that he was afraid of Barreau and, viewing the evidence in a light most favorable to Keeran, the evidence supports a finding that Keeran reasonably believed that Barreau would attempt to harm Keeran if Keeran did not comply with Barreau's orders. But that only suggests that Keeran's *safest* course was to comply with Barreau's orders; it does not mean that Keeran's *only* course was to comply with Barreau's orders. The coercion defense is not a license to take the safest course. Further, viewing the evidence in a light most favorable to Keeran, the evidence supports a finding that Keeran reasonably believed that if he successfully managed to separate himself from Barreau, Barreau would attempt to hunt Keeran down and harm him later. But such a finding would not support a coercion defense because the defense requires the prevention of "imminent" death or great bodily harm.

¶ 16. Therefore, the trial court properly declined to instruct Keeran's jury on coercion.[4]

### B. Ineffective Assistance of Trial Counsel

¶ 17. Keeran next argues that his trial counsel provided ineffective assistance by failing to offer available testimony supporting Keeran's two primary defense "propositions": (1) that Barreau was a violent psychopath in the Charles Manson mode, and (2) that the relationship between Barreau and Keeran was that of master and slave. Keeran does not claim that these propositions constitute a stand-alone theory of defense. Instead, he contends they support a coercion defense.[5] More specifically, Keeran asserts that his trial counsel deficiently failed to present several witnesses who would have given testimony supporting a jury finding that Keeran had a reasonable belief that Barreau was capable of extreme violence and was willing to inflict death or great bodily harm on Keeran if Keeran did not comply with Barreau's orders. According to Keeran, his counsel's failure to present evidence of this type caused prejudice.

---

[4] We need not address the State's argument that the coercion defense was not available to Keeran because Barreau was Keeran's coconspirator for purposes of all of the crimes, including the homicide, and the coercion statute provides that the threat must be made by someone other than the actor's coconspirator.

[5] Keeran states in his brief: "The primary purpose of this evidence was to establish that on the day that the crime was hatched, that Barreau was acting in a 'Charles Manson' mode, with the motive, intent and plan to coerce and intimidate Keeran into participating in the crimes."

¶ 18. The State contends that much, if not all, of the testimony Keeran now points to is either inadmissible or cumulative. However, we need not sort through these many arguments because Keeran has failed to satisfy the prejudice prong of ineffective assistance.

¶ 19. A defendant alleging ineffective assistance of counsel has the burden of showing that his counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990). Showing prejudice means showing that defense counsel's alleged errors actually had some adverse effect on the defense. *Strickland*, 466 U.S. at 693. The defendant cannot meet this burden by simply showing that an error had some conceivable effect on the outcome. *Id.* Instead, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *State v. Moats*, 156 Wis. 2d 74, 101, 457 N.W.2d 299 (1990).

¶ 20. Assuming, for argument sake, that much of the testimony Keeran points to would be available and admissible at a second trial (to show that Keeran reasonably believed that Barreau would attempt to kill or cause great bodily harm to Keeran if Keeran did not assist in the crimes), there is nonetheless no doubt that trial counsel's failure to present such testimony did not cause prejudice. We have already explained that Keeran was not entitled to a coercion defense instruction because the evidence was insufficient to support such an instruction. The insufficiency we have described has nothing to do with the reasonableness of Keeran's asserted belief that Barreau would, at his first oppor-

tunity, attempt to harm Keeran if Keeran did not assist Barreau in the crimes. Rather, the deficiency is that Keeran's testimony does not support a finding that compliance with Barreau's directives was the *"only means* of preventing *imminent* death or great bodily harm."* WIS. STAT. § 939.46(1) (emphasis added). Our conclusion that the evidence was insufficient with respect to "only means" and "imminent" harm is unaffected by any additional evidence purporting to show Keeran's knowledge of Barreau's dangerousness.

¶ 21. Keeran needed to produce evidence showing that cooperation with Barreau's criminal endeavors was Keeran's *only means* of avoiding *imminent* death or great bodily harm. Because Keeran's testimony did not present evidence showing that he had no other means of preventing *imminent* harm, additional evidence showing that Keeran reasonably feared that Barreau would attempt to harm Keeran at Barreau's first opportunity would not have entitled Keeran to a coercion defense instruction. Accordingly, Keeran was not prejudiced by the failure to present this additional evidence.

## C. Interest of Justice

¶ 22. Keeran requests a new trial in the interest of justice, pursuant to WIS. STAT. § 752.35. However, the arguments Keeran offers in support are no different than those we have addressed above. Accordingly, we decline to order a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.