STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark M. BENSON, Defendant-Appellant.†

Court of Appeals

*No. 2011AP1399–CR. Submitted on briefs March 15, 2012.
—Decided August 1, 2012.*

2012 WI App 101

(Also reported in 822 N.W.2d 484.)

† Petition for Review denied 12-10-12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jerome F. Buting* of *Buting & Williams, S.C.*, Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. GUNDRUM, J. This case arises from an incident in which Mark M. Benson, while under the influence of an intoxicant, crashed into the back of a vehicle driven by expectant mother Jennifer Bukosky and occupied by minors Courtney A.B., Deborah R.G., and Zachary B.B. The collision killed Bukosky, her unborn child, and Courtney, caused great bodily harm to Deborah, and injured Zachary. Benson ultimately pled to and was sentenced on three counts of homicide by intoxicated use of a vehicle, including a count related to Bukosky's unborn child, one count of causing great bodily harm by intoxicated use of a vehicle, and one count of causing injury by intoxicated use of a vehicle.

¶ 2. Benson appeals his conviction related to causing the death of an unborn child, arguing that he has been unconstitutionally denied equal protection of the law. He also appeals his sentence, contending the circuit court erred at sentencing by relying on inaccurate information in his expert's report related to the amount of Ambien[1] in his blood and its effect on his functioning capabilities at the time of the crash. Lastly, Benson claims he was denied the effective assistance of counsel at sentencing because his counsel submitted to the court the expert's report which contained errors apparent to counsel but which counsel failed to correct prior to sentencing. We reject all Benson's challenges and affirm.

## BACKGROUND

¶ 3. On April 25, 2008, Bukosky, who was pregnant, was stopped at a traffic light in her Honda Accord, with minors Courtney, Deborah and Zachary as passengers. Benson crashed the SUV Cadillac Escalade he was driving into the back of Bukosky's vehicle. As a result of the collision, Bukosky, her unborn child, and Courtney were killed. Deborah and Zachary were injured.

¶ 4. Benson was charged with three counts of homicide by intoxicated use of a vehicle, including a count related to Bukosky's unborn child, one count of causing great bodily harm by intoxicated use of a vehicle, and one count of causing injury by intoxicated use of a

---

[1] The terms "Ambien" and "zolpidem" are used interchangeably in the record. The Wisconsin State Laboratory of Hygiene report submitted by Benson for sentencing identifies Ambien as a brand name for zolpidem. For simplicity and clarity, we will use the term Ambien.

vehicle. Benson moved to dismiss the count related to Bukosky's unborn child, arguing that the statute it is based on is unconstitutional on equal protection grounds on its face and as applied to Benson. The court denied Benson's motion. Benson eventually pled to and was sentenced on each count.

¶ 5. Prior to sentencing, Benson's counsel submitted to the court a report from Dr. Francis Gengo, a doctor of pharmacology. In the report, Gengo identifies the level of Ambien in the blood sample drawn from Benson approximately one hour after the crash, but utilizes certain phrasing which, Benson argues, gave the sentencing court the inaccurate impression that the level of Ambien in his system was well in excess of therapeutic levels.

¶ 6. The court sentenced Benson to nine years of initial confinement and ten years of extended supervision on each of the three homicide counts, two and one-half years of initial confinement and five years of extended supervision on the great bodily harm count, and six months on the injury count, all consecutive.

¶ 7. Benson moved for postconviction relief, seeking resentencing on the grounds that the circuit court relied on the challenged Ambien-related information in Gengo's report when it sentenced Benson and that Benson's counsel provided ineffective assistance by submitting Gengo's report to the court without correcting the information. The circuit court denied Benson's motion.

¶ 8. Benson renews his equal protection and sentencing related claims on appeal. Additional facts will be addressed as appropriate throughout the decision.

131

## EQUAL PROTECTION

¶ 9. Benson first argues that his conviction for homicide by intoxicated use of a vehicle, causing the death of an unborn child, contrary to WIS. STAT. § 940.09(1)(c) (2009–10),[2] cannot stand because WIS. STAT. § 939.75(2)(b)3.[3] creates an unconstitutional exemption from criminal liability for "[a]n act by a woman who is pregnant with an unborn child that results in the death of or great bodily harm, substantial bodily harm or bodily harm to that unborn child."

---

[2] WISCONSIN STAT. § 940.09 addresses "Homicide by intoxicated use of vehicle or firearm" and provides in relevant part:

(1) Any person who does any of the following may be penalized . . . .

(c) Causes the death of an unborn child by the operation or handling of a vehicle while under the influence of an intoxicant.

Here we note a clerical error with regard to the amended judgment of conviction. At the plea hearing, the circuit court referenced and Benson pled to the elements for homicide by intoxicated use of a vehicle, causing the death of an unborn child, contrary to § 940.09(1)(c). The amended judgment of conviction, however, incorrectly states that Benson was convicted under subsection (1)(a). This is a clerical error which does not affect the validity of Benson's conviction or sentence, and Benson does not contend that it does. Accordingly, although we affirm Benson's conviction in all respects, we remand to the circuit court with directions that the amended judgment of conviction be amended to reference the correct statute subsection. See State v. Huff, 2009 WI App 92, 319 Wis. 2d 258, 769 N.W.2d 154.

All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[3] WISCONSIN STAT. § 939.75(2)(b) provides in relevant part that § 940.09(1)(c) does not apply to:

¶ 10. Specifically, Benson complains that under Wis. Stat. § 939.75(2)(b)3. a pregnant woman can cause the death of the unborn child within her "by drinking, drug overdose, stabbing herself in the abdomen or any other means, including intoxicated use of a vehicle" without criminal liability, while others, like Benson, are not similarly exempt for such acts causing the death of the same unborn child. Benson argues that because the statute exempts "certain intoxicated drivers" from criminal liability for causing the death of an unborn child, "equal protection prohibits his prosecution for the same conduct in this case."[4] Benson contends that a pregnant woman who causes the death of the unborn child within her by intoxicated use of a vehicle is similarly situated to all others, including Benson, who might cause death to the unborn child by intoxicated use of a vehicle because both "groups" are "intoxicated drivers who kill an unborn child." He is incorrect.

¶ 11. As pertinent to this case, the two groups the statute creates are: (1) intoxicated drivers who cause the death of or harm to an unborn child living within them and (2) intoxicated drivers who cause the death of or harm to an unborn child living within another person. These two groups are meaningfully different.

---

3. An act by a woman who is pregnant with an unborn child that results in the death of or great bodily harm, substantial bodily harm or bodily harm to that unborn child.

[4] Benson references the Equal Protection Clauses of both the Fourteenth Amendment to the United States Constitution and the Wisconsin Constitution. Because we interpret both clauses in an identical manner, we analyze them as one. *See State v. Heft*, 185 Wis. 2d 288, 293 n.3, 517 N.W.2d 494 (1994).

133

¶ 12. The Equal Protection Clause is not implicated, much less violated, unless the groups which are treated differently are similarly situated in the first instance. *Treiber v. Knoll*, 135 Wis. 2d 58, 67 n.5, 398 N.W.2d 756 (1987). A pregnant woman who causes the death of or harm to an unborn child within her is not similarly situated to others, like Benson, who might cause the death of or harm to the same child. As such, the Equal Protection Clause is not implicated.

¶ 13. A challenge to the constitutionality of a statute is a question of law we review de novo. *State v. Lohmeier*, 196 Wis. 2d 432, 437, 538 N.W.2d 821 (Ct. App. 1995), *rev'd on other grounds,* 205 Wis. 2d 183, 556 N.W.2d 90 (1996). Such a challenge "must overcome a strong presumption of constitutionality." *State v. Thiel*, 188 Wis. 2d 695, 706, 524 N.W.2d 641 (1994). Indeed, if any doubt exists as to a statute's constitutionality, "it must be resolved in favor of constitutionality." *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989). "A party attacking a statute on constitutional grounds has the burden of proving that the statute is unconstitutional beyond a reasonable doubt." *Lohmeier*, 196 Wis. 2d at 437. Benson bears the burden of showing that the statute treats similarly situated individuals differently. *See id.* at 437–39; *see also Tomczak v. Bailey*, 218 Wis. 2d 245, 261, 578 N.W.2d 166 (1998); *Opichka v. Opichka*, 2010 WI App 23, ¶ 20, 323 Wis. 2d 510, 780 N.W.2d 159. He has not met that burden.

¶ 14. A pregnant woman who engages in conduct which causes the death of or harm to the unborn child within her necessarily jeopardizes her own life or health by engaging in such conduct. If the pregnant woman drinks excessively, overdoses on drugs, or stabs herself

in the abdomen, to use Benson's examples, causing risk of death or harm to the unborn child, she necessarily risks death or harm to herself as well. No one else, including Benson, inherently risks death or harm to himself or herself by engaging in conduct which causes the death of or harm to an unborn child living within another individual. Further, of the two "groups" who might cause the death of or harm to an unborn child by intoxicated use of a motor vehicle, only the pregnant woman has the ability to subsequently procure medical care for the unborn child or terminate her pregnancy.

¶ 15. Because neither Benson nor anyone else is similarly situated to a pregnant woman who engages in conduct which causes the death of or harm to the unborn child within the pregnant woman, there is no equal protection violation.

## SENTENCING

¶ 16. Benson next argues that he is entitled to resentencing on the grounds that he was sentenced, at least in part, based on inaccurate information in violation of his due process rights. Specifically, he argues that Gengo's report gave the court the mistaken impression that Benson had a level of Ambien in his system at the time of the crash which was well above the therapeutic level, suggesting he had misused the drug, and that the court relied upon this misimpression in fashioning Benson's sentence. Alternatively, Benson argues that his counsel performed ineffectively by submitting Gengo's report to the court for its consideration at sentencing without correcting the information Benson claims was inaccurate and which counsel admits he noticed and had questions about prior to submitting the report to the court.

135

¶ 17. Because Benson's counsel himself submitted Gengo's report to the court and failed to correct or object to the Ambien-related information prior to Benson's sentencing, Benson cannot now claim his due process rights were violated by the court's consideration of that same information. He has forfeited the issue. *See State v. Harris*, 2012 WI App 79, ¶ 14, 343 Wis. 2d 479, 819 N.W.2d 350; *State v. Leitner*, 2001 WI App 172, ¶ 41, 247 Wis. 2d 195, 633 N.W.2d 207, *aff'd*, 2002 WI 77, 253 Wis. 2d 449, 646 N.W.2d 341; *State v. Mosley*, 201 Wis. 2d 36, 46, 547 N.W.2d 806 (Ct. App. 1996). Benson is entitled, however, to seek sentencing relief on the grounds that his counsel performed ineffectively by submitting the allegedly inaccurate information to the court without correcting or objecting to it prior to sentencing. *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999) (while appellate courts can ignore forfeiture, the "normal procedure" in criminal cases is to address forfeiture within the rubric of an ineffective assistance of counsel analysis).

¶ 18. To prove ineffective assistance of counsel, Benson bears the burden of convincing this court that his counsel was both deficient in his performance and that the deficiency prejudiced Benson. *See State v. Allen*, 2004 WI 106, ¶ 26, 274 Wis. 2d 568, 682 N.W.2d 433. If either showing falls short, a claim of ineffective assistance fails. *Id.* Because Benson was not prejudiced by counsel's submission of and failure to correct or object to Gengo's report, we do not address whether counsel performed deficiently.

¶ 19. On review, we will uphold the circuit court's factual findings on an ineffective assistance of counsel

determination unless they are clearly erroneous, *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990); however, whether counsel's performance prejudiced Benson is a question of law we review de novo. *Id.* at 128. To prove prejudice, Benson must show that but for counsel's alleged error in submitting Gengo's report to the court and not correcting or objecting to the alleged inaccuracies prior to sentencing, there is a reasonable probability the result of the sentencing hearing would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). Speculation about what the result of the proceeding might have been is insufficient. *Erickson*, 227 Wis. 2d at 774. Rather, Benson must demonstrate that his counsel's alleged error actually had some adverse effect. *State v. Keeran*, 2004 WI App 4, ¶ 19, 268 Wis. 2d 761, 674 N.W.2d 570 (2003).

¶ 20. Gengo's report indicates that *"therapeutic concentrations of* oxycodone [are] between 10 and 100 mcg/L, *therapeutic concentrations of* alprazolam [are] between 25 and 100 mcg/L, and [Ambien] [are] between 3 and 18 mcg/L."* (Emphasis added.) The report states that the levels of oxycodone and alprazolam found in Benson's blood sample were within therapeutic limits. While the report references the correct concentration of Ambien found in Benson's blood sample, 253.9 ng/ml, Benson argues that the above-quoted sentence from the report could be interpreted as indicating that the therapeutic level for Ambien is *between 3 and 18 mcg/L*.[5] This would give the mistaken impression, Benson argues, that he had a concentration of Ambien in his

---

[5] Gengo uses the chemical measurements of mcg/L and ng/ml interchangeably. Benson states in his brief that "[t]he expression of a chemical in mcg/L is the equivalent of ng/ml." The State does not suggest otherwise.

blood that was approximately fifteen times greater than the therapeutic range, thus giving the impression that his conduct was much more reckless than it actually was.

¶ 21. In an affidavit Benson submitted in support of his postconviction motion, Gengo states that, postsentencing, he discovered "a lack of clarity" on this issue in his report. Gengo avers that the therapeutic level for Ambien was actually "between *3 - 272 ng/ml*" (emphasis added), placing Benson's 253.9 ng/ml concentration "*within* the normal range of a therapeutic blood-level for [Ambien]." (Emphasis in original.) Thus, Benson argued in his postconviction motion and again on appeal that the level of Ambien in his system at the time of the crash was actually within the therapeutic range, not substantially above it, which is the mistaken impression Benson claims the court relied upon when it sentenced him.

¶ 22. As one of many considerations at sentencing, the circuit court did discuss the "level or degree to which [Benson] was under the influence." Benson has not convinced us, however, that the court in fact had an incorrect impression about the level of Ambien in his system. at the time of the crash or that any impression the court might have had actually impacted his sentence.

¶ 23. In considering Benson's intoxication, the circuit court noted that Benson had utilized validly prescribed drugs but that "the problem" was his "misuse." The court referenced Ambien as "the culprit," and remarked that "the blood test here showed that this medication was present at much higher than therapeutic levels." The court quoted from Gengo's report, commenting that "Dr. Gengo indicates that Ambien, at this level, could produce [] 'significant cognitive impairment.' " The court further stated: "So this certainly is a serious level of being under the influence, of being incapacitated."

¶ 24. The circuit court, however, also noted that it was "reported that Mr. Benson took Ambien both before and after the time of the crash." Because of this, the court stated that there was "some lack of perfect clarity as to when that therapeutic level was reached or the above therapeutic level." The court commented that police officers who interacted with Benson at the scene shortly after the crash did not observe Benson to be "wasted." The court further stated that it was "hard to evaluate" how "under the influence" Benson was, and *"[a]ll in all, no one can, I can't, no expert has told me, any way to quantify the degree of Mr. Benson's impairment at the time of the collision."* (Emphasis added.) Significantly, in summarizing its observations related to the extent to which Benson was under the influence at the time of the crash, the court stated:

> I don't have any information to conclude that it was highly aggravated. I have seen cases where people chug a couple of doubles and then hit the road after they have already been drinking, or when they take multiple dose[s] of opiate, medicine, and otherwise. *I don't see that kind of information before me.* (Emphasis added.)

These statements significantly undermine Benson's contention that, in sentencing him, the court relied on the impression that Benson had taken an excessive dosage of Ambien prior to causing the crash or that the court viewed Benson's actions as being more reckless or aggravated because of that.

¶ 25. At the postconviction hearing, the court quoted many of these same statements it made at the time of sentencing[6] and concluded that the record "clearly shows" that at sentencing it was expressing

---

[6] The same judge presided over the plea, the sentencing, and the postconviction hearing.

there was no clarity about the amount of Ambien in Benson's system at the time of the crash and that it could not quantify the degree of Benson's impairment at the time of the collision. The court noted that, while it did not expressly discuss it at sentencing, it was the law of the case that Benson pled to and was found guilty of the multiple counts of being intoxicated while he was driving. The court observed that "it's part of the sentencing that we're dealing with someone who is intoxicated."

¶ 26. Based on this record, we cannot conclude that there is a reasonable probability the result of the sentencing hearing would have been different had Benson's counsel clarified the Ambien-related information in Gengo's report prior to sentencing. While some of the court's comments at sentencing suggest the court may have believed Gengo's report indicated Benson's blood sample, taken approximately one hour after the crash, had an excessive amount of Ambien in it, nothing about the court's comments suggest Benson received a harsher sentence because of any perceived level of Ambien in his blood sample. To the contrary, the court's sentencing comments indicate that the court was not able to "quantify the degree of Mr. Benson's impairment at the time of the collision" and that it did not believe Benson had taken "multiple dose[s] of opiate, medicine, [or] otherwise." The postconviction court was correct that it was part of the sentencing that the court was "dealing with someone who [was] intoxicated." We are not convinced there is a reasonable probability Benson received a harsher sentence because of the Ambien-related information in Gengo's report. He has not shown prejudice.

¶ 27. We affirm the judgment and order. We remand for correction of the clerical error in the amended judgment of conviction.

*By the Court.*—Judgment and order affirmed and cause remanded with directions.