J-A24006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARCELL MCCOY | |
| Appellant | No. 318 EDA 2014 |

Appeal from the Judgment of Sentence December 18, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): MC-51-MD-0003137-2013

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

DISSENTING MEMORANDUM BY PANELLA, J.    **FILED DECEMBER 14, 2015**

I respectfully dissent from my esteemed colleagues in the Majority. I would affirm the judgment of sentence following McCoy's conviction of *direct* criminal contempt, but remand for the correction of a clerical error. The trial court often confuses direct and indirect criminal contempt in this case. As explained in my dissent, however, it is clear from the *record* that the trial court, despite its confusion of the terminology, actually convicted McCoy of direct criminal contempt. This conviction should be affirmed.

I begin with McCoy's final claim—her fifth issue raised on appeal. The Majority states that "in terms of the procedure used by the court, we cannot discern how it was proper to allow an eyewitness to the alleged wrongdoing

_____

[*] Retired Senior Judge assigned to the Superior Court.

prosecute Appellant." Majority Memorandum, at 6. But this is not the issue McCoy raises on appeal. And we cannot reverse on a basis not even raised by an appellant on appeal.

In this appeal, McCoy argues that her due process rights were violated because the trial "court ordered the hearing to go forward with the assistant district attorney acting as both the prosecutor and the witness." Appellant's Brief, at 35. But this is simply not true. The trial court never ordered such conduct. McCoy called the assistant district attorney as a witness—after the Commonwealth finished with its witnesses. *See* N.T., Hearing, 11/25/13, at 17 ("Your Honor, the defense will call the District Attorney."). Thus, this issue has no merit. Below, I explain why her other issues fail too.

McCoy attended the preliminary hearing of her fiancée, and father of her child, Shawn Freeman. Freeman was charged with rape, among other offenses. After the sixteen-year-old victim testified, she stepped into the hallway located immediately outside the courtroom. Accompanying the victim were her father, sister, and an assistant district attorney. McCoy approached the victim and held her cell phone out towards the victim as if she was taking her picture. The victim's father leapt in front of the cell phone and told her to stop taking pictures. Frightened, the victim and her sister fled back into the safety of the courtroom.

The trial court postponed its docket to deal with this matter. The trial court had McCoy sworn in. McCoy denied taking the picture. The trial court

found her in violation of a stay away order it had entered earlier that day and sentenced her to a term of confinement of 29 to 60 days in county jail. Freeman's attorney, Stephen Fleury, Esquire, was then permitted to "stand in for her" and argued on her behalf. N.T., Hearing, 11/25/13, at 7. He pointed out that McCoy had no way of knowing about the stay away order and that she was entitled to counsel and a hearing on the contempt charge. The trial court agreed and held a contempt hearing.

Attorney Fleury represented McCoy. The assistant district attorney who witnessed the episode represented the Commonwealth. The victim recounted what happened in the hallway. The father testified as to what he saw. McCoy called the assistant district attorney as a witness. She testified that she observed McCoy holding a cell phone up to the victim. Finally, McCoy testified. She denied any wrongdoing. She stated that she never held up a cell phone and did not take any pictures.

In her closing argument, McCoy argued that the Commonwealth failed to introduce into evidence any pictures from the cell phone. The trial court noted that "[y]ou don't need a photograph to show that someone is pointing a phone at someone to intimidate them[]" and that "[w]hether they took the picture or not is completely irrelevant to the fact of intimidation." *Id*., at 23-24.

The trial court found McCoy guilty of "indirect criminal contempt" and sentenced her to 30 to 60 days in county custody. *Id*., at 24. The order

finding her in contempt of court referenced 42 Pa.C.S.A. § 4137(a)(1). **See** Contempt of Court Order, dated 11/25/13. Section 4137 pertains to the contempt powers of *magisterial district judges*. The trial court in this case was a common pleas court judge.

McCoy filed a post-sentence motion. The trial court held a hearing on the motion. At the hearing, McCoy brought to the trial court's attention that the order improperly found her guilty under § 4137. The trial court responded, "that does not apply to me." N.T., Hearing, 12/18/13, at 4 (capitalized typeface omitted). McCoy then explained that both she and the Commonwealth were in agreement that the correct statute was § 4132 of the Judicial Code. **See id**. Ultimately, the trial court reaffirmed its finding of "contempt" and denied the post-sentence motion. It then entered another sentencing order. That order, however, notes that McCoy was convicted pursuant to 42 Pa.C.S.A. § 4137(a)(1), and ordered immediate parole. This timely appeal followed.

I must first address the implications of the sentencing order referencing the wrong statute. I raise this issue *sua sponte*. I may do so because if the language referencing the incorrect statute controls the sentence is illegal. **See Commonwealth v. Mathias**, 121 A.3d 558, 562 n.3 (Pa. Super. 2015) ("[C]hallenges to an illegal sentence can never be waived and may be raised *sua sponte* by the Superior Court."). As I explain below, I

find that the incorrect statute referenced in the sentencing order is a mere clerical error, which the trial court could easily correct on remand.

The sentencing order is patently incorrect. Section 4137 only applies to magistrate judges. As of January 1, 1969, the office of magistrate was abolished in Philadelphia and a new municipal court, among other specialty courts, was established in its place. *See Glancey v. Casey*, 288 A.2d 812, 814 (Pa. 1972). *See also* Pa.Const. Art. 5, § 6; Pa.Const. Art. 5, Schedule 16(u).

"A trial court has the inherent, common-law authority to correct 'clear clerical errors' in its orders." *Commonwealth v. Thompson*, 106 A.3d 742, 766 (Pa. Super. 2014) (citations omitted). A court possesses such authority even after the thirty-day time limitation provided in 42 Pa.C.S.A. § 5505, Modification of orders. *See id*. *See also Commonwealth v. Holmes*, 933 A.2d 57, 65 (Pa. 2007). The Pennsylvania Supreme Court has "set a high bar for differentiating between errors that may be corrected under the inherent powers of trial courts, and those that may not[.]" *Commonwealth v. Borrin*, 80 A.3d 1219, 1227 (Pa. 2013). "[C]orrectible errors" are "those determined to be 'patent and obvious mistakes.'" *Id*. (citation omitted). A "clerical error" has been defined as an error that is "inconsistent with what in fact occurred in a case, and, thus, subject to repair." *Id*. (citation omitted).

Our Supreme Court has affirmed the correcting of a sentencing order where the illegality was apparent on the face of the order, *see Holmes*, 933

A.2d at 66, and found, in a companion case, an error "obvious and patent" where an examination of the "Quarter Session notes in the record" disclosed a sentence for a probationary term that did not exist," **see id**. and at n.18.

The key is the "obviousness of the illegality ... that triggers the court's inherent power." **Holmes**, 933 A.2d at 66-67. Here, the error is painfully obvious. It references a contempt statute that is plainly inapplicable. No one was under the impression in this case that the trial judge was a magistrate. Section 4137(c) authorizes imprisonment of only up to 30 days whereas the trial court in this case imposed a maximum sentence of 60 days. In fact, as mentioned, no party has even mentioned § 4137 on appeal; the parties and trial court all refer to § 4132.

What happened here is no different from a scenario where a defendant was charged with a particular offense, went to trial for or pleaded guilty to that particular offense, was convicted of that particular offense, and was sentenced for that particular offense, but the sentencing order mistakenly declares that the defendant was convicted of a completely different crime. Courts throughout the nation, including this one, **see Commonwealth v. Young**, 695 A.2d 414 (Pa. Super. 1997), have held that such an error constitutes a patent and obvious clerical error that is subject to correction, even after the trial court loses traditional jurisdiction. **See**, **e.g.**, **United States v. James**, 642 F.3d 1333, 1343 (11th Cir. 2011); **United States v.**

*McBride*, 584 F.3d 1240, 1259 (9th Cir. 2009); *State v. Benson*, 822 N.W.2d 484, 487 n.2 (Wis.App. 2012).

I find that the trial court's unfortunate reference to § 4137(a)(1) in the sentencing order constitutes an obvious patent defect or mistake and that as such the trial court possesses the inherent power to correct the order, despite the expiration of the modification period provided by 42 Pa.C.S.A. § 5505. *See Holmes*. On remand, the trial court could simply correct the sentencing order. Now onto the merits.

"[W]hen reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court decision." *Commonwealth v. Kolansky*, 800 A.2d 937, 939 (Pa. Super. 2002) (citation omitted).

McCoy first argues that the evidence was legally insufficient to convict her of indirect criminal contempt for violating a stay away order. There are multiple problems with this argument. McCoy was initially found guilty of violating the stay away order, but the trial court abandoned that decision and ordered a contempt hearing focused on the intimidation of the witness. *See* N.T., Hearing, 11/25/13, at 4-8. As noted, Attorney Fleury, Freeman's lawyer, informed the trial court that there was no way for McCoy to have

known about the stay away order. **See id**., at 7-8. Thus, violation of the stay away order became moot.[1]

It is true that after the hearing the trial court announced that it found her guilty of "indirect criminal contempt," N.T., Hearing, 11/25/13, at 24, but at the hearing on the post-sentence motion the trial court notes that it actually found her guilty of direct criminal contempt. **See** N.T., Post-Sentence Motion Hearing, 12/18/13, at 7. In addition, both of the orders, although they reference the incorrect statute, indicate that the contempt occurred "in presence of court." Sentence Order, dated 12/18/13 (capitalization omitted). **See also** Contempt of Court Order, dated 11/25/13. Direct criminal contempt involves conduct occurring in the presence of a court. **See Commonwealth v. Patterson**, 308 A.2d 90, 92 (Pa. 1973). Indirect criminal contempt, on the other hand, occurs "outside the presence of the court." **Commonwealth v. Brumbaugh**, 932 A.2d 108, 109 (Pa. Super. 2007) (citation omitted). McCoy was never held in indirect criminal contempt.

McCoy next argues that there was insufficient evidence to sustain the conviction for direct criminal contempt. I disagree. The evidence shows that McCoy acted to intimidate the victim.

---

[1] This makes discussion of McCoy's second issue unnecessary.

The trial court found McCoy guilty of direct criminal contempt pursuant to 42 Pa.C.S.A. § 4132(3). That subsection requires proof beyond a reasonable doubt "(1) of misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) which obstructs the administration of justice. To obstruct justice, conduct must significantly disrupt proceedings." **Commonwealth v. Falana**, 696 A.2d 126, 128 (Pa. 1997) (citations omitted). "This Court has recognized misconduct occurs in the presence of the court if the court itself witnesses the conduct *or* if the conduct occurs outside the courtroom but so near thereto that it obstructs the administration of justice." **Commonwealth v. Moody**, ___ A.3d ___, ___, 2015 WL 6472549, *9 (Pa., filed October 27, 2015) (quoting **Falana**, 696 A.2d at 129) (internal quotation marks omitted; emphasis in original).

Here, as noted, the victim, among others, testified that McCoy walked up to her and held a cell phone out as if she were taking her picture. This occurred just after the victim walked out of the courtroom and had testified that McCoy's fiancée had raped her. Frightened, the victim immediately ran back into the courtroom seeking a safe refuge. This conduct did not occur directly in front of the trial court, but just outside the courtroom. The trial court writes in its opinion that "[t]his prevented the [c]ourt from proceeding with the remaining cases on the docket." Trial Court Opinion, 11/5/14, at 2.

I find this evidence sufficient to sustain the conviction for direct criminal contempt as the credited testimony establishes that McCoy was

trying to intimidate the victim, which was obviously designed to obstruct judicial proceedings.

McCoy next contends that her due process rights were violated when the trial court failed to provide notice of any charge other than the violation of the stay away order. We disagree.

In the context of criminal contempt, the Pennsylvania Supreme Court has "candidly acknowledged" that it tolerates "a drastic departure from our traditional view of due process[.]" *Moody*, ___ A.3d at ___, 2015 WL 6472549, *5 (internal quotation marks and citation omitted; brackets in original). "[T]he Constitution does not require any particular mode of informing an accused of the charges against him." *Commonwealth v. Mayberry*, 327 A.2d 86, 91 (Pa. 1974) (citations omitted). All that is required is that "a contemnor should have reasonable notice of the specific charges and opportunity to be heard in his own behalf." *Id*. (citations and internal quotation marks omitted).

The record flatly contradicts McCoy's assertion. McCoy was made aware that the trial court was proceeding with a hearing for criminal contempt based on her behavior in allegedly (at that time) intimidating the complaining witness in her fiancée's preliminary hearing. *See* N.T., Hearing, 11/25/13, at 4-8; 18-19. Accordingly, this claim fails.

I would affirm the judgment of sentence and remand for the correction of a clerical error.

- 10 -