# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2292-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, <br> Plaintiff-Respondent, <br> v. <br> Donavinn D. Coffee, <br> Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 385 Wis. 2d 211,923 N.W.2d 181
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | January 9, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 21, 2019 |

SOURCE OF APPEAL:

| | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Fredrick C. Rosa |

JUSTICES:

ZIEGLER, J., announced the judgment of the Court and delivered the majority opinion of the Court with respect to Parts I through III and Part IV.C. and D., in which ROGGENSACK, C.J., HAGEDORN, and KELLY, JJ., joined. KELLY, J., filed a concurring opinion, in which REBECCA GRASSL BRADLEY, J., joined ¶¶59-63. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY and DALLET, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Nicole M. Masnica*, assistant state public defender. There was an oral argument by *Nicole M. Masnica*.

For the plaintiff-respondent, there was a brief filed by *Aaron R. O'Neil*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Aaron R. O'Neil*.

**2020 WI 1**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2292-CR
(L.C. No. 2015CF4965)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

    v.

Donavinn D. Coffee,

    Defendant-Appellant-Petitioner.

**FILED**

**JAN 9, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

ZIEGLER, J., announced the judgment of the Court and delivered the majority opinion of the Court with respect to Parts I through III and Part IV.C. and D., in which ROGGENSACK, C.J., HAGEDORN, and KELLY, JJ., joined. KELLY, J., filed a concurring opinion, in which REBECCA GRASSL BRADLEY, J., joined ¶¶59-63. ANN WALSH BRADLEY, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY and DALLET, JJ., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a per curiam decision of the court of appeals, State v. Coffee, No. 2017AP2292-CR, unpublished slip. op. (Wis. Ct. App. Nov. 6, 2018), affirming the Milwaukee County circuit court's[1] judgment of

---

[1] The Honorable Frederick C. Rosa presided.

conviction and order denying Donavinn D. Coffee's ("Coffee") postconviction motion for resentencing.[2]  Coffee argues that the circuit court violated his due process rights because the circuit court relied on inaccurate information at sentencing, and that error was not harmless.  Neither Coffee nor his counsel objected to the inaccurate information at the sentencing hearing.  Rather, Coffee's first objection to the inaccurate information was in his postconviction motion.  The postconviction court concluded that: (1) the State introduced inaccurate information at the sentencing hearing; and (2) the circuit court actually relied on the inaccurate information; but (3) the error was harmless.  Thus, the postconviction court denied Coffee's motion for resentencing.  The court of appeals affirmed, but not on the merits of Coffee's inaccurate information at sentencing claim.  Instead, the court of appeals concluded that Coffee forfeited his claim because he failed to object at the sentencing hearing.  We now affirm, but we resolve this case on the merits.

¶2   A defendant has a constitutional due process right to be sentenced upon accurate information.  State v. Tiepelman, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1.  Coffee's constitutional due process right was violated.  Indeed, both Coffee and the State agree that the circuit court actually relied on inaccurate information when it sentenced Coffee.  Accordingly, the issues before this court are: (1) whether Coffee forfeited his ability to

---

[2] The postconviction court also denied Coffee's motion for a sentence modification.  Coffee did not appeal that denial and the issue is not before this court.

later challenge the inaccurate information because he failed to object at the sentencing hearing; and, (2) if Coffee did not forfeit his claim, whether the circuit court's reliance on the inaccurate information at sentencing was harmless error.

¶3 We conclude that the forfeiture rule does not apply to previously unknown, inaccurate information first raised by the State at sentencing. Rather, a postconviction motion is also a timely manner in which to bring that claim. Accordingly, we conclude that Coffee did not forfeit his ability to challenge the inaccurate information at his sentencing. We nonetheless conclude that the circuit court's reliance on inaccurate information at Coffee's sentencing was harmless error. Thus, we affirm the court of appeals.

## I.   FACTUAL BACKGROUND

¶4 On November 10, 2015, in Milwaukee, G.B. was robbed at gunpoint. He stated that he was talking on the phone in an alley when a white Mercury Mountaineer sped toward him. It stopped near him and a black male with dreadlocks exited the rear passenger-side door of the SUV, gun in hand. The driver and the gunman demanded that G.B. give them all his "stuff." G.B. gave the gunman $50.00, and the gunman took G.B.'s cell phone and wallet. Both suspects then fled in the white SUV.

¶5 About five minutes later, just a few blocks away, D.J. was shot from behind while attempting to flee from a white SUV. He stated that the white SUV pulled up alongside him, and a black male with dreadlocks opened the rear passenger-side door. He

3

exited the SUV, holding a gun, and told D.J., " [Y]ou better not run." But, fearing for his safety, D.J. did run. Moments later, he was shot in the back. D.J. suffered shotgun pellet wounds to the upper back and left ear.

¶6 City of Milwaukee police officers investigated shots fired in the area. Officer Joseph Goggins spotted a white Mercury Mountaineer, turned on his emergency lights and siren, and pursued the suspect SUV. The SUV sped up, forcing a pursuit for 22 blocks. It finally stopped, but the two suspects then fled on foot. Donavinn Coffee and Antonio Hazelwood were eventually detained. Coffee later admitted he was the gunman.

## II. PROCEDURAL POSTURE

¶7 On November 15, 2015, the State filed a criminal complaint against Coffee and Hazelwood, charging them each with three counts——armed robbery, attempted armed robbery, and first-degree recklessly endangering safety, all as a party to a crime. The State also charged Hazelwood with a fourth count of fleeing or eluding an officer.

¶8 On June 6, 2016, Coffee pled guilty to all three counts against him. Pursuant to the plea agreement, the State would recommend "a substantial prison sentence." On June 23, 2016, the circuit court held a sentencing hearing. What unfolded at the sentencing hearing is crucial to Coffee's appeal. At the hearing, the prosecutor recommended "substantial" prison time. During his statement to the circuit court, the prosecutor discussed Coffee's record. He stated:

4

> [Coffee] does have two prior convictions. There was a 2014 misdemeanor case. It came in as a criminal damage to property, disorderly conduct and contact after domestic abuse arrest.
>
> The conviction was for the contact after the domestic abuse arrest. He pled guilty on that July 1, 2014. Judge Flanagan sentenced him to probation. He also has a conviction in January of 2013 for carrying a concealed weapon. In that case, he received probation as well.
>
> There were two cases that were no process by my office, October 2014, there was a misdemeanor battery. What's alarming from the State's [perspective] because of the nature of this offense that's in front of the Court is that December 2011 there was an <u>armed robbery</u> case that was sent to my office. That was a no process.
>
> So what the defendant has shown here with his past criminal conduct, not only is there a weapon's related offense, but there was something that triggered a law enforcement investigation and reviewed by my office for offenses by a title similar in nature to this.

(Emphasis added.)

¶9 The State told the circuit court that Coffee had a prior arrest for armed robbery. That was inaccurate. He was not arrested for <u>armed robbery</u>, but rather for suspicion of <u>strong-arm robbery</u> and then released. The State concedes that Coffee was never arrested for armed robbery in December 2011. The State never filed any charges against Coffee for strong-arm robbery in December

2011.[3] Thus, the State introduced inaccurate information at the sentencing hearing.

¶10  Next, Coffee's counsel and Coffee each made a statement. Consistent with the plea agreement, each acknowledged that prison time was merited in this case. Then the circuit court spoke. Importantly, the circuit court explicitly referenced a prior arrest for armed robbery. The circuit court said to Coffee:

> So [the prosecutor] there says you had a couple of police contacts. No charges but one of them was an armed robbery. Then you had these domestic violence situations. So then you were kind of becoming acquainted with the criminal justice system.
>
> Any reason why those contacts were not enough to get you to kind of think about your associations and your choices that you were making out there?

(Emphasis added.) And later the circuit court stated:

> So you have got some misdemeanor cases; one successful probation, one unsuccessful probation. You have got a couple of police contacts; one significant concern because it sounds like it was an armed robbery which is what these offenses are.
>
> So you basically are engaging in behavior that is kind of getting more serious. Domestic violence by itself is natured as assaultive behavior, meaning violence against another human being.

---

[3] Some conclude that Coffee did not commit strong-arm robbery; that he was wrongfully arrested because two witnesses told law enforcement that the offender was not Coffee. The presumption of innocence certainly applies, but experience demonstrates that, without knowing more, we can reach no conclusion. Using a police report alone to analyze and conclude the guilt or innocence of a person is not what our court should do. Who committed the strong-arm robbery is not an issue before us today. Indeed, Coffee has not been charged with strong-arm robbery.

But these other things are violence and property crimes, and I don't know what else to call it. So that pattern of your behavior or undesirable behavior is escalating.

(Emphasis added.)

¶11 Thus, the circuit court relied on the inaccurate information——a prior arrest for armed robbery——at the sentencing hearing. But the circuit court also discussed other relevant information at the hearing. Indeed, the circuit court began its sentencing remarks by stating, "My responsibility in imposing a sentence is to look at the gravity of the offense. I look at your character, offenses, plural, look at the need to protect the public." The circuit court then went on to discuss the significant harm to the victims in this case, the increasing gun violence problem in Milwaukee, Coffee's criminal intent, the harm to Coffee's family (including his young son), Coffee's education and work history, and the need to protect the public. We describe the circuit court's discussion of each of these factors in more detail below.

¶12 The circuit court then took a brief recess to deliberate over the proper sentence for Coffee. After the recess, the circuit court noted that both parties agreed that prison time was appropriate in this case. "Nobody has requested probation in this case because it isn't a probation case. These are really serious offenses. There's been substantial harm to the victims." The circuit court added that it imposed consecutive sentences for each count to "underscore" that each count was a serious offense. The circuit court then pronounced a sentence of four years of initial

7

confinement and three years of extended supervision each for the armed robbery and attempted armed robbery counts. For the first-degree reckless endangerment count, the circuit court imposed five years of initial confinement and three years of extended supervision. Thus, Coffee was sentenced to 13 years of initial confinement and nine years of extended supervision.

¶13 On August 7, 2017, Coffee filed a motion for postconviction relief. Coffee argued that he must be resentenced because the State introduced inaccurate information at sentencing, the circuit court actually relied on it, and the error was not harmless. Specifically, Coffee argued that his Criminal Information Bureau ("CIB") report did not show any arrests in December 2011. The State filed a response brief, to which it appended a Milwaukee Police Department Incident Report from December 27, 2011. According to that report, Coffee and another person were arrested for suspicion of strong-arm robbery. The State provided no explanation as to why the December 2011 arrest was not included in Coffee's CIB report.

¶14 On October 31, 2017, the postconviction court issued a decision and order denying Coffee's motion for postconviction relief. The postconviction court took issue with the State's use of the incident report because it described an arrest for strong-arm robbery, not armed robbery, "and more significantly, [Coffee] apparently was not involved in the offense." Ultimately, the postconviction court concluded that it had considered the December 2011 arrest at the sentencing hearing, but the error was harmless.

8

Although the court considered the December 2011 incident during its sentencing decision, the court focused primarily on the defendant's conduct in <u>this</u> case, his contribution to the prevalence of gun violence that is threatening the fabric of our community, the impact of his crimes upon the victims and the greater community, his background and rehabilitative needs, and the need to protect the public.  Even without information about the December 2011 police contact, the fact that the defendant <u>used</u> a weapon in the commission of the offenses in this case <u>and that he shot one of his victims</u> would have led the court to the same conclusion that he was "engaging in behavior that is getting more serious" and that his "pattern . . . of undesirable behavior is escalating."  . . .  Consequently, to the extent that the court relied upon the December 2011 incident at the sentencing hearing, the error was harmless because it did not materially affect the court's sentencing decision in this case.

¶15 Coffee appealed.  He again argued that his due process right to be sentenced based on accurate information was violated, and the error was not harmless.  In response, the State argued for the first time that Coffee had forfeited his inaccurate information at sentencing claim because he failed to object at the sentencing hearing.  The court of appeals agreed.  On November 6, 2018, the court of appeals concluded that Coffee had forfeited his claim because he "had numerous chances to object to the 2011 arrest information during the sentencing hearing and failed to do so." <u>Coffee</u>, No. 2017AP2292-CR, unpublished slip op., ¶12.

¶16  On December 4, 2018, Coffee petitioned this court for review.  We granted the petition.

### III.  STANDARD OF REVIEW

¶17  We are asked to decide whether Coffee forfeited his inaccurate information at sentencing claim and, if not, whether

the error was harmless. Whether a claim is forfeited or adequately preserved for appeal is a question of law this court reviews de novo. State v. Corey J.G., 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998). Whether a defendant has been sentenced in violation of his due process rights, and whether that error is harmless are questions of law this court reviews de novo. Tiepelman, 291 Wis. 2d 179, ¶9; State v. Travis, 2013 WI 38, ¶20, 347 Wis. 2d 142, 832 N.W.2d 491.

## IV. ANALYSIS

### A. Forfeiture Generally

¶18 The State argues that Coffee forfeited his inaccurate information at sentencing claim because he failed to object at the sentencing hearing. Coffee argues that the forfeiture rule does not, and should not, apply to inaccurate information at sentencing claims because applying the forfeiture rule would not promote the fair and orderly administration of justice. Before we analyze the issue, a summary of the forfeiture rule, its purpose, and its effect is helpful.

¶19 Forfeiture is the failure to timely assert a right. State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612. Under the forfeiture rule, a defendant may forfeit a right if the defendant fails to object at the time the right is violated. Id., ¶30. The forfeiture rule fosters the fair, efficient, and orderly administration of justice.

> The purpose of the "forfeiture" rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need

10

for appeal. The forfeiture rule also gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection; encourages attorneys to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal.

Id. (footnotes omitted); see also State v. Pinno, 2014 WI 74, ¶56, 356 Wis. 2d 106, 850 N.W.2d 207; State v. Huebner, 2000 WI 59, ¶11, 235 Wis. 2d 486, 611 N.W.2d 727.

¶20 Some rights are so fundamental that they are not subject to the forfeiture rule. Ndina, 315 Wis. 2d 653, ¶31. For example, the right to counsel, the right to refrain from self-incrimination, and the right to a jury trial are not subject to forfeiture. Huebner, 235 Wis. 2d 486, ¶14. Rather, those fundamental constitutional rights generally must be waived.[4] Id. But see State v. Suriano, 2017 WI 42, ¶1, 374 Wis. 2d 683, 893 N.W.2d 543 (holding that the defendant forfeited the right to counsel by his conduct).

¶21 And in some cases, a court may choose to ignore the forfeiture rule and reach the merits of a claim. After all, the forfeiture rule is a rule of judicial administration, not a mandate. See, e.g., Ndina, 315 Wis. 2d 653, ¶38 (reaching the merits of a claim where "both parties failed to make objections in a timely manner"). The forfeiture rule should not be applied where

---

[4] "'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).

11

its application would not further its purpose——the fair, efficient, and orderly administration of justice.

¶22 If a court applies the forfeiture rule to a claim, then "the normal procedure in criminal cases is to address [that claim] within the rubric of the ineffective assistance of counsel." State v. Erickson, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). Thus, rather than arguing the merits of an underlying claim, the defendant would have to argue that defense counsel performed deficiently when counsel failed to object (forfeiting the defendant's claim) and that failure to object prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668 (1984).

¶23 Bearing in mind the purpose and effect of the forfeiture rule, we now turn to the issue of whether Coffee forfeited his ability to later challenge by postconviction motion the inaccurate information presented at his sentencing.

### B. Coffee Did Not Forfeit His Inaccurate Information At Sentencing Claim.

¶24 In this case, the State first introduced inaccurate information regarding a December 2011 prior arrest, stating that it was for armed robbery rather than strong-arm robbery, at Coffee's sentencing hearing. Coffee's counsel did not object at sentencing. Rather, Coffee filed a postconviction motion, arguing that his due process right to be sentenced based on accurate information was violated.

¶25 The State argues that Coffee forfeited his request to be resentenced because he failed to object to the inaccurate information at the sentencing hearing. Furthermore, the State

12

argues that the failure to contemporaneously object is harmful to the judicial process and the State's interest in finality. Coffee argues that the forfeiture rule should not apply in cases like this——where the previously unknown, inaccurate information is first introduced by the State at the sentencing hearing and counsel has not had an opportunity to confer with the defendant regarding the nature and extent of the inaccuracy. According to Coffee, application of the forfeiture rule to claims of inaccurate information first introduced and known at sentencing would not promote the fair and orderly administration of justice. We agree with Coffee.

¶26 We conclude that the forfeiture rule does not preclude the ability to later challenge the State's spontaneous presentation at sentencing of previously unknown, inaccurate information. Rather, while counsel may object to this information at the sentencing hearing, and while that may be the best practice to ensure the sentence is based on accurate information, a postconviction motion like that presented here is also available. Applying the forfeiture rule to these claims would not promote the fair, efficient, and orderly administration of justice because it could put defense counsel in an impossible predicament.

¶27 The State's position here is that the forfeiture rule requires defense counsel to object contemporaneously at sentencing to previously unknown and largely unavailable information and to spontaneously understand the importance of that information to sentencing. We recognize that a best practice in these cases may be to contemporaneously bring this new information to the circuit

13

court's attention and object to the circuit court relying on the new information or to request adjournment. This practice might obviate the need to later file a postconviction motion.

¶28 Requesting an adjournment, however, has its shortcomings. Discovering the details of the new information may actually be to the detriment of the defendant, and counsel may have consequently acted contrary to the defendant's interest by requesting adjournment. While it is just and fair to ensure that the circuit court has the most accurate information at sentencing, and a defense lawyer's duty is to act as an officer of the court, a defense lawyer's duty is also to properly advocate for the client.[5]

¶29 When suspected inaccurate information is first introduced by the State at sentencing, <u>defense counsel does not know what defense counsel does not know</u>. Defense counsel cannot possibly make an informed decision of how exactly to object, if at all. Nor can defense counsel possibly know whether the objection would help or hurt the defendant. Nor can defense counsel know, at the time the suspected inaccurate information is introduced, whether the circuit court will actually rely on it. At oral

---

[5] Applying the forfeiture rule here could put defense counsel in an impossible predicament——between a rock and a hard place. If counsel fails to object, then the claim may be forfeited. If counsel objects, and the information is in fact accurate, then the objection may have actually made the defendant's position at sentencing worse. If the information is inaccurate, but the truth is even more damaging to the defendant, then the defendant could face a harsher sentence than if defense counsel had not objected. This could also result in an ineffective assistance of counsel claim if counsel's objection prejudiced the defendant.

argument, this court asked the State what an appropriate contemporaneous objection at sentencing would look like. The State's only response was that it would depend on the facts of each case. But if counsel does not know what counsel does not know, then defense counsel cannot possibly be required to make an appropriate objection based on the unknown facts.

¶30 In contrast, if the forfeiture rule does not apply to challenges to this type of spontaneously raised information, then defense counsel has time to evaluate the information, discuss it with the defendant, determine if it is indeed inaccurate, and ascertain whether it was actually relied on at sentencing. A postconviction motion may or may not be necessary.

¶31 The forfeiture rule is supposed to promote the fair, efficient, and orderly administration of justice. See Huebner, 235 Wis. 2d 486, ¶11. Its application here could actually promote the opposite. Thus, we conclude that the forfeiture rule does not apply to previously unknown, inaccurate information first raised by the State at sentencing. Rather, while an objection may be the best practice, a postconviction motion is also a timely manner in which to assert that claim.

¶32 The State's argument that the forfeiture rule should apply at sentencing relies in part on Handel v. State, 74 Wis. 2d 699, 247 N.W.2d 711 (1976), State v. Mosley, 201 Wis. 2d 36, 547 N.W.2d 806 (Ct. App. 1996), and State v. Johnson, 158 Wis. 2d 458, 463 N.W.2d 352 (Ct. App. 1990). In each case, the court concluded that a claim regarding inaccurate or improper information at sentencing was forfeited for failure to object at

sentencing. But each of those cases involved information in a presentence investigation report ("PSI"). Importantly, defense counsel receives a copy and has the opportunity to review the PSI with the defendant before the sentencing hearing. And defense counsel can make a fully-informed and carefully-prepared objection to the contents of a PSI at sentencing. The same cannot be said here.

¶33 The State also relies on the court of appeals' decisions in State v. Samuel, 2001 WI App 25, 240 Wis. 2d 756, 623 N.W.2d 565 (claim that circuit court relied on sealed record defendant did not have access to before sentencing was forfeited), and State v. Leitner, 2001 WI App 172, 247 Wis. 2d 195, 633 N.W.2d 207 (claim that circuit court relied on behavior underlying expunged convictions at sentencing was forfeited). But neither of those cases involved inaccurate information at sentencing claims.

¶34 Finally, the State cites State v. Benson, where the court of appeals held that a defendant forfeited an inaccurate information at sentencing claim by failing to object at sentencing. 2012 WI App 101, ¶17, 344 Wis. 2d 126, 822 N.W.2d 484. But this case is also easily distinguished. In Benson, it was defense counsel who introduced the allegedly inaccurate information at sentencing. Id. Before the sentencing hearing, defense counsel submitted a report detailing the presence of Ambien in Benson's system at the time of his car crash. Id., ¶5. Defense counsel had the information before sentencing and had time to determine whether the information was accurate. Furthermore, it was defense

16

counsel who submitted the inaccurate information, not the State. Thus the court of appeals concluded:

> Because Benson's counsel himself submitted [the] report to the court and failed to correct or object to the Ambien-related information prior to Benson's sentencing, Benson cannot now claim his due process rights were violated by the court's consideration of that same information. He has forfeited the issue.

Id., ¶17. Application of the forfeiture rule was appropriate in Benson. Benson is readily distinguishable from the case at issue.

¶35 We are also unpersuaded by the State's argument that the forfeiture rule should apply because it has a reliance interest in finality. Finality is important, but so is the opportunity to evaluate previously unknown, inaccurate information first raised by the State at sentencing.

¶36 Having concluded that Coffee did not forfeit his inaccurate information at sentencing claim, we now proceed to further analyze whether a resentencing is warranted.

C. Inaccurate Information At Sentencing Claims Generally

¶37 "No person may be held to answer for a criminal offense without due process of law . . . ." Wis. Const. art. I, § 8, cl. 1. Defendants have a due process right to be sentenced based upon accurate information. Tiepelman, 291 Wis. 2d 179, ¶9. This right was first set forth by the United States Supreme Court in Townsend v. Burke, 334 U.S. 736 (1948), and further developed in United States v. Tucker, 404 U.S. 443 (1972).[6] This court's analysis has

_____

[6] Under the United States Constitution, "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

17

also been informed by the Seventh Circuit Court of Appeals' decision in United States ex rel. Welch v. Lane, 738 F.2d 863 (7th Cir. 1984). Defendants "have a right to a fair sentencing process——one in which the court goes through a rational procedure of selecting a sentence based on relevant considerations and accurate information." Id. at 865. As this court has stated:

> When a circuit court relies on inaccurate information, we are dealing "not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude." A criminal sentence based upon materially untrue information, whether caused by carelessness or design, is inconsistent with due process of law and cannot stand.

Travis, 347 Wis. 2d 142, ¶17 (footnotes omitted) (quoting Tucker, 404 U.S. at 447).

¶38 A defendant who was sentenced based on inaccurate information may request resentencing. Tiepelman, 291 Wis. 2d 179, ¶26. The defendant must show by clear and convincing evidence that: (1) some information at the original sentencing was inaccurate, and (2) the circuit court actually relied on the inaccurate information at sentencing. Id.; Travis, 347 Wis. 2d 142, ¶22. A circuit court actually relies on incorrect information when it gives "'explicit attention' or 'specific consideration' to it, so that the misinformation 'formed part of the basis for the sentence.'" Tiepelman, 291 Wis. 2d 179, ¶14 (quoting Lane, 738 F.2d at 866). If the defendant meets this burden, then the burden shifts to the State to prove beyond a reasonable doubt that the error was harmless. Travis, 347

18

Wis. 2d 142, ¶86. If the State fails to meet this burden, then the defendant is entitled to resentencing. If the State meets this burden, then the sentence remains undisturbed. "The State can meet its burden to prove harmless error by demonstrating that the sentencing court would have imposed the same sentence absent the error." Id., ¶73. The most important piece of evidence for a reviewing court is the sentencing transcript itself, not "the [postconviction] court's assertions" or "speculation about what a circuit court would do in the future upon resentencing." Id. (citing State v. Smith, 207 Wis. 2d 258, 262-63, 280, 558 N.W.2d 379 (1997); Lane, 738 F.2d at 868; Tucker, 404 U.S. 443). Accordingly, our analysis in this case focuses on the sentencing transcript and avoids speculation.

### D. The Error Was Harmless.

¶39 The record is clear that the State introduced inaccurate information at sentencing——Coffee was not arrested for armed robbery in December 2011. The record is also clear that the circuit court actually relied on the armed robbery arrest at the sentencing hearing——the court specifically referenced it twice. Coffee met his burden. The issue before this court then becomes whether the State has demonstrated that the error was harmless.

¶40 Coffee argues that the error was not harmless because the inaccurate information here was so integral to the sentencing hearing that it cannot be "excised" without speculation or a "retrospective hunt" for other information to justify the sentence, both of which are forbidden by Tiepelman, Travis, and Lane. The State argues that the error was harmless because,

19

regardless of whether Coffee had a prior arrest for armed robbery, the circuit court's statements at sentencing remain accurate and the circuit court would have imposed the same sentence.  We agree with the State.

¶41  We note that the postconviction court had the opportunity to address this issue.  It made clear that its sentence would have been the same.  The postconviction court concluded, "[T]o the extent that the [circuit] court relied upon the December 2011 incident at the sentencing hearing, the error was harmless because it did not materially affect the court's sentencing decision in this case."  But we look to the sentencing transcript to determine whether the State has met its burden.  Travis, 347 Wis. 2d 142, ¶73.

¶42  At the sentencing hearing, the first time the circuit court gave "specific consideration" to the arrest for "armed robbery," it was in the context of a discussion of Coffee's multiple prior police contacts.  The circuit court then asked, "Any reason why those contacts were not enough to get you to kind of think about your associations and your choices that you were making out there?"  Thus, to the circuit court, prior police contacts put Coffee on notice, and ought to have given him pause.  Importantly, this logic would remain true regardless of whether Coffee was arrested for armed robbery in December 2011.  Coffee had two prior misdemeanor convictions for domestic abuse and carrying a concealed weapon.  He also had a prior arrest for misdemeanor battery.  Based on those three prior police contacts

alone, the circuit court's question made sense. "Any reason why those contacts were not enough . . . ?"

¶43 The second time the circuit court gave "specific consideration" to the arrest for "armed robbery," it was in the context of Coffee's escalating criminal conduct. The circuit court described the prior convictions and other police contacts, and then concluded, "So that pattern of your behavior or undesirable behavior is escalating." This conclusion also remains true regardless of whether Coffee was arrested for armed robbery in December 2011. Coffee had been convicted for domestic abuse and carrying a weapon on separate occasions. And in this case, he had shot a man. His conduct was getting increasingly violent, and increasingly serious, from misdemeanors to felonies. Prior armed robbery arrest or no, Coffee's "undesirable behavior [was] escalating."

¶44 We conclude beyond a reasonable doubt that the State has met its burden to demonstrate that the circuit court's remarks and conclusions at Coffee's sentencing would have been the same absent the inaccurate information. Furthermore, it cannot be said that the prior arrest for armed robbery was integral to Coffee's sentence.

¶45 At sentencing, the circuit court's remarks began with a discussion of Coffee's victims. The circuit court stated:

> They really change the way they live their lives because now they're afraid it might happen again.
>
> This poor gentleman that you shot, those feelings of violation and fear and taking away whatever security

21

he might have felt to that point, that's really amplified in his situation.

¶46 Second, the circuit court discussed the increasing gun violence problem in Milwaukee. The circuit court stated:

We're getting killed here in Milwaukee with gun violence. I mean, it is off the charts. We have so many shootings, robberies involving guns, drug activities involving guns, people with disputes, beefs against each other involving guns.

¶47 Third, the circuit court discussed Coffee's criminal intent, saying it "seem[ed] like it was just as much for kicks, fun, enjoyment, thrill, whatever it was, for actually taking property from these particular individuals."

¶48 Fourth, the circuit court discussed the impact to Coffee's family. "Even when they aren't directly the victims, they suffer consequences too, because this is the city they have to live in also with all of these kinds of things going on." The circuit court also noted the impact on Coffee's young son.

¶49 Fifth, the circuit court considered Coffee's education and work experience. And sixth, the circuit court considered the need to protect the public. "Suffice it to say, that there's a real community interest in being protected here." The circuit court then took a brief recess prior to pronouncing sentence.

¶50 After the recess, the circuit court did not mention a prior arrest for armed robbery whatsoever. Rather, the circuit court noted that both the State and Coffee's counsel understood this case required prison time. "[T]hey believe because of what you did and for the good of the community, you do have to be removed from the community for a substantial period of time." The

22

circuit court stated that Coffee had caused "substantial harm to the victims" and that Coffee had been on "probation before, and it's not been successful." The circuit court then pronounced a sentence of 13 years of initial confinement and nine years of extended supervision.

¶51 The sentencing transcript is clear that the circuit court based its sentence on Coffee's contribution to gun violence in Milwaukee, the harm to the community, the harm to the victims, and Coffee's need to be removed from the community. It is clear that these factors were not merely other factors that supported Coffee's sentence, but were the basis of the sentence. We have not gone on a "retrospective hunt" for other information that would have justified Coffee's sentence. The circuit court clearly stated on the record at the sentencing hearing what justified the sentence. We conclude beyond a reasonable doubt that "the sentencing court would have imposed the same sentence absent the error." Travis, 347 Wis. 2d 142, ¶73. Thus, we conclude that the error was harmless.

## V. CONCLUSION

¶52 We conclude that the forfeiture rule does not apply to previously unknown, inaccurate information first raised by the State at sentencing. Rather, a postconviction motion is also a timely manner in which to bring that claim. Accordingly, we conclude that Coffee did not forfeit his ability to challenge the inaccurate information at his sentencing. We nonetheless conclude that the circuit court's reliance on inaccurate information at

23

Coffee's sentencing was harmless error.  Thus, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶53 DANIEL KELLY, J. *(concurring).* Mr. Coffee forfeited his right to object to the inaccurate information about his arrest, so I disagree with that part of the court's opinion. But since I, like the majority, agree that the circuit court's reliance on the mistake was harmless, I join the court's mandate as well as Parts I-III and Part IV.C & D of the majority opinion.

## I. FORFEITURE

¶54 When the circuit court said Mr. Coffee "had a couple of police contacts . . . [and] one of them was an armed robbery," it misstated the facts. One of those contacts was for strong-arm robbery, not armed robbery. But Mr. Coffee held his tongue and allowed the court to pronounce sentence based on information he knew to be incorrect.[1] The majority says he may simultaneously preserve his silence <u>and</u> his right to challenge his sentence at some later point based on the misstatement about which he said nothing.

¶55 The court says this rule is necessary to avoid putting defense counsel "in an impossible predicament——between a rock and a hard place":

> If counsel fails to object, then the claim may be forfeited. If counsel objects, and the information is in fact accurate, then the objection may have actually made the defendant's position at sentencing worse. If the information is inaccurate, but the truth is even more damaging to the defendant, then the defendant could face a harsher sentence than if defense counsel had not objected. This could also result in an ineffective

---

[1] According to the police report——created at the time of his arrest——Mr. Coffee was arrested specifically for strong-arm robbery.

1

assistance of counsel claim if counsel's objection prejudiced the defendant.

Majority op., ¶28 n.5.

¶56 But defense attorneys are intimately familiar with rocks and hard places. This so-called "predicament" is really just the omnipresent, on-going cost-benefit calculation counsel must perform as a matter of course throughout trial. As the prosecution presents its case, defense counsel must carefully consider, in real time, every piece of evidence as it comes in throughout the entirety of the proceeding. Upon hearing each piece of information, often for the first time, he must assess its accuracy against the information in his possession, weigh its likely impact on the jury, consider how it might strengthen or weaken his theory of defense, determine its effect on evidence yet to be introduced, and analyze its compliance with evidentiary rules. And he must do all of that in the heartbeat that passes between when he hears the evidence and he rises to announce his objection. This he must do upon pain of forfeiting the claimed error: "Error may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike appears of record . . . ." Wis. Stat. § 901.03(1)(a)(2017-18). We have reiterated that rule many times. See, e.g., Allen v. Allen, 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977) ("A failure to make a timely objection constitutes a waiver of the objection."); Holmes v. State, 76 Wis. 2d 259, 272, 251 N.W.2d 56 (1977) ("This court has repeatedly held that one of the rules of evidence is that an objection must be made as soon as the opponent might reasonably be aware of the objectionable nature of the testimony.").

2

¶57 So why do we suddenly change the rules when the case enters the sentencing phase? With respect to evidentiary matters, the statutory and constitutional safeguards are no different. The majority says that "[d]efendants have a due process right to be sentenced based upon accurate information." Majority op., ¶37 (citing State v. Tiepelman, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1). But that's true of the conviction-producing trial, too. The whole purpose of an adversarial justice system is the ascertainment of the truth. See In re Winship, 397 U.S. 358, 362 (1970) ("[P]roof of a criminal charge beyond a reasonable doubt is constitutionally required. . . . These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property." (quoted source and internal marks omitted)); McLemore v. State, 87 Wis. 2d 739, 751, 275 N.W.2d 692 (1979) ("To safeguard the system of the search for truth we have built up the various rules of evidence, again based on long experience, so that evidence and testimony going to the jury will be free from elements tending to distort the search."); Mathews v. Eldridge, 424 U.S. 319, 348, (1976) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] . . . [an] opportunity to meet it.'" (quoted source omitted, some alterations in original)). If there is some principle lurking around our constitutional jurisprudence that says a defendant has a lesser due process interest in conviction upon accurate information than in sentencing upon accurate information, no one has identified it.

3

## II. HARMLESS ERROR

¶58 Although I believe there is no need to consider Mr. Coffee's claimed error, I agree with the court that the distinction between "armed robbery" and "strong arm robbery" was harmless. But that was not the only error Mr. Coffee assigned to the court's treatment of the arrest record. The second is Mr. Coffee's claim that referencing the arrest at all, without regard to its taxonomy, was problematic because he did not commit the crime. And according to Mr. Coffee, the police records vindicate him on this point. The court's opinion, however, refuses to engage with this alleged error.

¶59 I want to address this aspect of the court's opinion (or, rather, its lack of this aspect) because of a curious, and troubling, juxtaposition between two of the thoughts it expressed. The first is the premise of the analysis: "A defendant has a constitutional due process right to be sentenced upon accurate information," the court says. Majority op., ¶2. The second is the court's casual indifference to whether the arrest tells us anything accurate about Mr. Coffee at all:

> Some conclude that Coffee did not commit strong-arm robbery; that he was wrongfully arrested because two witnesses told law enforcement that the offender was not Coffee. The presumption of innocence certainly applies, but experience demonstrates that, without knowing more, we can reach no conclusion. Using a police report alone to analyze and conclude the guilt or innocence of a person is not what our court should do. Who committed the strong-arm robbery is not an issue before us today. Indeed, Coffee has not been charged with strong-arm robbery.

Id., ¶9 n.3 (emphasis added).

4

¶60 Actually, who committed the strong-arm robbery is at issue today. It's true that "without knowing more, we can reach no conclusion"[2] about whether Mr. Coffee had anything to do with the alleged offense. But we still consider ourselves free to use that arrest against him. And that, oddly enough, is actually the rule in Wisconsin: "This court has stated that the trial court in imposing sentence for one crime can consider other unproven offenses, since those other offenses are evidence of a pattern of behavior which is an index of the defendant's character, a critical factor in sentencing." Elias v. State, 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980) (emphasis added); id. ("This court held in Grant v. State, 73 Wis. 2d 441, 243 N.W.2d 186 (1976) that the trial court could consider offenses which were uncharged and unproven.") (emphasis added).

¶61 Here's the juxtaposition that worries me. We affirm Mr. Coffee's constitutionally-protected right to have his sentence based on nothing but accurate information while simultaneously denying any interest in the accuracy of one of the pieces of information used against him. It is certainly true that we use uncharged and unproven offenses against defendants at sentencing because——we say——they "are evidence of a pattern of behavior which is an index of the defendant's character." Id. But it is also patently true that this is absurd. Every single person ever acquitted after trial was first arrested. Sometimes the defendant is acquitted because the State didn't meet its high standard of proof. But sometimes it's because the defendant didn't actually

---

[2] Majority op., ¶9 n.3.

5

commit the crime. And arrestees frequently don't even go to trial because the police find the perpetrator who did commit the offense. And yet, according to our rules, that arrest forever remains a valid basis for influencing a sentence, even though it may not in fact say anything at all about him.

¶62 With respect to character, an arrest (by itself) is a question mark, nothing more. Police may arrest an individual based on information "which would 'warrant a man of reasonable caution in the belief' that a felony has been committed." Wong Sun v. United States, 371 U.S. 471, 479 (1963) (quoted source omitted). This is not "evidence which would suffice to convict," id., it is simply the reasonable belief of a single person. And sometimes that belief is mistaken. A witness may have inaccurately identified the arrestee as the culprit, or he may have been driving the same type of car as the actual perpetrator, or he was just at the wrong place at the wrong time——the explanations could go on at length. And, of course, we sometimes find that an officer simply didn't have sufficient information to arrest the individual.[3] All of this demonstrates why an arrest——without more——is not proof of

---

[3] See, e.g., Henes v. Morrissey, 194 Wis. 2d 338, 355, 533 N.W.2d 802 (1995) ("[W]e conclude that the deputies lacked probable cause to arrest [the defendant] for refusing to identify himself; his refusal could not elevate the deputies' reasonable suspicion that he committed the car theft to probable cause that he obstructed their investigation."); State v. Marquardt, 2001 WI App 219, ¶19, 247 Wis. 2d 765, 635 N.W.2d 188 (Explaining that there was "nothing in the facts to tie [the defendant] to the crime, much less to tie his home to the crime."); State v. Travis, No. 1994AP385-CR, unpublished slip op., *4 (Wis. Ct. App. Nov. 17, 1994) (Holding that an informant's tip did not provide enough information to create probable cause to arrest the defendant.).

the arrestee's character. At most, it is proof of what the arresting officer thought about the person at the time of arrest. Those are not the same things, but we act as though they are.

¶63 If we are committed to sentences based on accurate information, it should matter whether an arrest really does evidence culpable behavior or bad character. If it doesn't matter, then we are at risk of increasing a defendant's sentence based on a criterion that says nothing relevant about him.

\* \* \*

¶64 Ultimately, the error in this case is still harmless because the circuit court would have imposed the same sentence even without referring to the arrest at all. The circuit court's rationale for the sentence was that Mr. Coffee's "pattern of . . . behavior or undesirable behavior [was] escalating." That is obvious from Mr. Coffee's record. Mr. Coffee had already been convicted for two misdemeanors (criminal damage to property and carrying a concealed weapon) before facing these charges, and now he has been convicted of armed robbery, attempted armed robbery, and first-degree recklessly endangering safety. Majority op., ¶¶7-8. So, the circuit court was correct that Mr. Coffee "was engag[ed] in behavior that [was] kind of getting more serious." Therefore, I concur with the court's conclusion that the circuit court's mention of the arrest (without regard to the inaccurate characterization of the robbery) was harmless.

¶65 I am authorized to state Justice REBECCA GRASSL BRADLEY joins ¶¶59-63 of this opinion.

7

¶66 ANN WALSH BRADLEY, J. *(dissenting).* Donavinn Coffee was arrested for a strong-arm robbery. Yet, there is not a shred of evidence that he had anything to do with it. Nothing.

¶67 In fact, he was quickly released after the victims of the robbery told police that it was a misidentification. Coffee didn't rob them. Such a course of action was further supported by the available evidence: the robber had tattoos on his arms, and Coffee does not.

¶68 Nevertheless, the State brought up this mistaken arrest at Coffee's sentencing for a completely separate crime to which he did plead guilty. The circuit court relied on the mistaken arrest as an example of Coffee's supposedly "escalating" conduct and sentenced him to a total of 13 years of initial confinement and nine years of extended supervision. All parties now agree that the information the State gave to the circuit court, and on which the circuit court relied, was inaccurate.

¶69 No harm, no foul, says the majority.

1

¶70 I agree with the majority/lead opinion[1] that "the forfeiture rule does not apply to previously unknown, inaccurate information first raised by the State at sentencing" and that "a postconviction motion is also a timely manner in which to bring that claim." Majority/lead op., ¶3. Therefore, I also agree that under the facts of this case, Coffee has not forfeited his direct challenge to this inaccurate information. Id.

---

[1] I refer to Justice Ziegler's opinion as the "majority/lead" opinion because the opinion in its entirety is not joined by a majority of the court. Justice Kelly joins Parts I-III and Part IV.C and D of the opinion, but he does not join Part IV.A and B. See Justice Kelly's concurrence, ¶53. Despite this dissent's agreement that the forfeiture rule does not apply in this case, Parts IV.A and B do not constitute a "majority" opinion of the court under State v. Griep, 2015 WI 40, ¶37 n.16, 361 Wis. 2d 657, 863 N.W.2d 567. In Griep, the court set forth, "[u]nder Marks, the positions of the justices who dissented from the judgment are not counted in examining the divided opinions for holdings." Id. (citing Marks v. United States, 430 U.S. 188, 193 (1977)). Although the vitality of Griep has been called into question, currently it remains in force. See State v. Hawley, No. 2015AP1113-CR, unpublished certification, 2-3 (Nov. 21, 2018).

The only reference to "lead opinions" in our Internal Operating Procedures (IOPs) states that if during the process of circulating and revising opinions, "the opinion originally circulated as the majority opinion does not garner the vote of a majority of the court, it shall be referred to in separate writings as the 'lead opinion' unless a separate writing garners the vote of a majority of the court." IOP III.G.4.

For further discussion of our procedure regarding lead opinions, see Koss Corp. v. Park Bank, 2019 WI 7, ¶76 n.1, 385 Wis. 2d 261, 922 N.W.2d 20 (Ann Walsh Bradley, J., concurring). See also two prior certifications from the court of appeals that have asked us to reexamine our lead opinion procedure. State v. Dowe, 120 Wis. 2d 192, 192-93, 352 N.W.2d 660 (1984) (per curiam); Hawley, No. 2015AP1113-CR, unpublished certification, 2-3; see also State v. Lynch, 2016 WI 66, ¶145, 371 Wis. 2d 1, 885 N.W.2d 89 (Abrahamson and Ann Walsh Bradley, JJ., concurring in part, dissenting in part).

2

¶71 However, I part ways with the majority's harmless error analysis. The circuit court's reliance on the inaccurate information the State presented was not harmless, and instead permeated the proceeding to an extent that resentencing should be required.

¶72 Accordingly, I respectfully dissent.

I

¶73 After pleading guilty to three separate charges, Coffee came before the circuit court for sentencing. Majority/lead op., ¶8. At the sentencing hearing, the State "told the circuit court that Coffee had a prior arrest for armed robbery." Id., ¶9. Specifically, the State argued at sentencing:

> What's alarming from the State's [perspective] because of the nature of this offense that's in front of the Court is that December 2011 there was an armed robbery case that was sent to my office. That was a no process.
>
> So what the defendant has shown here with his past criminal conduct, not only is there a weapon[s] related offense, but there was something that triggered a law enforcement investigation and reviewed by my office for offenses by a title similar in nature to this.

¶74 As the majority acknowledges, "[t]hat was inaccurate." Id. It turned out that Coffee was arrested for strong-arm robbery, the arrest was the result of a misidentification, and Coffee was quickly released. But these facts were not presented to the circuit court and it specifically cited the inaccurate information in fashioning Coffee's sentence. On several occasions during its sentencing remarks, the circuit court mentioned Coffee's previous mistaken arrest for armed robbery, and it tied the arrest into

3

what it termed Coffee's "escalating" undesirable behavior.  Id., ¶10.

¶75  After he was sentenced, Coffee moved for postconviction relief, arguing that the circuit court's reliance on the inaccurate information violated his due process right to be sentenced upon accurate information.  Id., ¶13.  The circuit court denied his motion, indicating that it had considered the incorrect information in pronouncing Coffee's sentence, but that even without the information it would have reached the same sentence.  Id., ¶14.  In the circuit court's words, "the error was harmless because it did not materially affect the court's sentencing decision in this case."  Id.

¶76  The court of appeals affirmed.  But rather than embracing the explanation given by the circuit court, it relied on different grounds.  It determined that by failing to object at the sentencing hearing, "Coffee forfeited the claim that he was sentenced based on inaccurate information . . . ."  State v. Coffee, No. 2017AP2292-CR, unpublished slip op., ¶1 (Wis. Ct. App. Nov. 6, 2018) (per curiam).

¶77  Now affirming the court of appeals, the majority/lead relies on the same grounds utilized by the circuit court—harmless error.  Majority/lead op., ¶52.  Contrary to the court of appeals, the majority/lead determines that Coffee did not forfeit his inaccurate information claim.  Id., ¶26.  However, it concludes that the circuit court's reliance on the incorrect information was harmless.  Id., ¶51.

4

II

¶78 As an initial matter, I write to clear up a fact of record that has been severely muddied by the majority.. Somewhat inexplicably, the majority views the only inaccuracy in the information relied upon by the circuit court as that Coffee was arrested for strong-arm robbery and not armed robbery. Id., ¶9.

¶79 The majority appears to insinuate that Coffee could have had something to do with the strong-arm robbery for which he was mistakenly arrested. Id., ¶9 n.3. It declares that "[s]ome conclude that Coffee did not commit strong-arm robbery; that he was wrongfully arrested because two witnesses told law enforcement that the offender was not Coffee. The presumption of innocence certainly applies, but experience demonstrates that, without knowing more, we can reach no conclusion." Id. Whose experience? And why does it justify turning a blind eye to the actual facts of this case?

¶80 Based on this self-proclaimed "experience," the majority/lead glosses over the record facts indicating that the arrest was the result of a misidentification. There is no evidence at all in the record tying Coffee to either the crime of strong-arm robbery or armed robbery. The police report from the incident, which is included in the record before this court, reveals the majority's error.

¶81 In the report, it is related that a victim of the strong-arm robbery for which Coffee was initially arrested stated that he first observed the perpetrators from behind and that Coffee "could" have been a subject who robbed him. However, after viewing

5

Coffee's face, he determined that Coffee was "not involved in this incident." The report further indicates the witness's description of the suspect as having dreadlocks and tattoos on his arms. Coffee has dreadlocks, but does not have tattoos on his arms.

¶82 The record therefore does not indicate that the only error in the information presented to the circuit court was the type of robbery for which Coffee was arrested. Indeed, there was no evidence at all that Coffee committed a robbery of any type in 2011.

¶83 Which brings me to the majority's harmless error analysis. In the majority's view, the circuit court's sentence would have been the same even if the inaccurate information regarding Coffee's arrest was not considered. Majority/lead op., ¶¶40-41.

¶84 Pursuant to this court's established methodology, a defendant seeking resentencing based on the presentation of inaccurate information before the sentencing court must demonstrate that the information was inaccurate and that the circuit court actually relied on the inaccurate information. State v. Tiepelman, 2006 WI 66, ¶2, 291 Wis. 2d 179, 717 N.W.2d 1. After the defendant meets this burden, the burden then shifts to the State to demonstrate that the error was harmless beyond a reasonable doubt. Id., ¶3; State v. Travis, 2013 WI 38, ¶86, 347 Wis. 2d 142, 832 N.W.2d 491.

¶85 The State can meet its burden to prove harmless error in a sentencing proceeding by demonstrating that the sentencing court would have imposed the same sentence absent the error. Id., ¶73.

6

But we cannot simply take the circuit court's word that it would have done so. See id. ("The State therefore correctly relies on the transcript of the sentencing proceeding in making its argument, and correctly refrains from relying on the circuit court's assertions during the hearing on the defendant's postconviction motion or speculation about what a circuit court would do in the future upon resentencing.").

¶86 Thus, I turn to the transcript of the sentencing proceeding. When pronouncing its sentence, the circuit court specifically referenced this arrest, speaking of Coffee's police contacts and stating that this arrest is of "significant concern because it sounds like it was an armed robbery which is what these offenses are." The circuit court saw this arrest as indicative of the "escalating" nature of Coffee's "undesirable behavior."

¶87 But what does the mistaken arrest really tell us about Coffee's behavior? What does it tell us about his character? What information does it provide that is at all relevant to his sentence? Given the facts in the record that Coffee had nothing to do with the crime, the answer to all of these questions is "nothing."

¶88 As Coffee posits in his reply brief, "his arrest for a robbery, armed or otherwise, was plainly irrelevant to his character. Instead, evidence of the prior arrest spoke only to the fact that as a young black man with long dreadlocks, Coffee once resembled someone who committed a robbery in December 2011."

¶89 It is true that Coffee pleaded guilty to a violent crime. The majority focuses on the circuit court's comments in this

7

regard, stating that "the circuit court based its sentence on Coffee's contribution to gun violence in Milwaukee, the harm to the community, the harm to the victims, and Coffee's need to be removed from the community." Majority/lead op., ¶51.

¶90 But that the nature of Coffee's offense demanded a prison sentence does not mean that Coffee would have received the same sentence had the State not raised the inaccurate information regarding Coffee's prior arrest. The erroneous consideration of an arrest for a violent offense can certainly affect a circuit court's view of a defendant.

¶91 Indeed, the references in the sentencing transcript to Coffee's mistaken arrest indicate that the circuit court viewed the arrest as a step in Coffee's "escalating" behavior. Absent consideration of the arrest, would the same pattern of "escalating" behavior have been established? We cannot be sure beyond a reasonable doubt as we must be to say the error was harmless. See Travis, 347 Wis. 2d 142, ¶86. Accordingly, Coffee is entitled to resentencing.

¶92 For the foregoing reasons, I respectfully dissent.

¶93 I am authorized to state that Justices REBECCA GRASSL BRADLEY and REBECCA FRANK DALLET join this dissent.